**Charles Edward BRYANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–09–00200–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 12, 2010.

Discretionary Review Refused
April 6, 2011.

Austin R. Jackson, Tyler, TX, for Appellant.

Carolyn Mills, Assistant Criminal District Attorney, Tyler, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

A jury convicted appellant Charles Edward Bryant of aggravated sexual assault of a child and assessed punishment at 18 years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2009).[1] Bryant brings four issues on appeal. In his first three issues, he challenges the trial court's admission of testimony from a investigator about (1) the concept of sexual predators "grooming" their victims, (2) his belief at the time he prepared an affidavit to support a warrant for Bryant's arrest that an offense had occurred, and (3) the fact that Bryant never returned his phone calls. In his fourth issue, Bryant argues that the trial court erred by failing to grant a mistrial after the State improperly suggested in closing argument that Bryant may have committed prior offenses.

We affirm.

## BACKGROUND

*Telephone Relationship*

The complainant, K.G., was 13 years old when she spent a summer with her 19–year–old cousin, C.J., and their grandmother. C.J. had a relationship with Bryant's cousin, and C.J. sometimes spoke to Bryant on the telephone. Without having met him in person, K.G. began speaking to Bryant on the telephone as well.

Initially, K.G. told Bryant that she was 16 years old, and, although he was actually 28 years old, he told her that he was 20.

---

1. The Texas Supreme Court transferred this appeal from the Court of Appeals for the Twelfth District of Texas. Misc. Docket No. 08–9177 (Tex. Dec. 15, 2008); *see* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005) (authoriz- ing transfer of cases). We are unaware of any conflict between precedent of the Court of Appeals for the Twelfth District and that of this Court on any relevant issue. *See* TEX. R.APP. P. 41.3.

Over the course of approximately 50 daily telephone calls, which were usually initiated by C.J. or K.G., Bryant discussed with K.G. "ordinary things about life in general." K.G. said they never discussed sex. At trial she testified that she told Bryant that she was only 13 years old, and that "[h]e didn't say it would make a difference in anything." Over the course of the telephone conversations, Bryant did not ask where K.G. lived or attempt to see her until the night of the offense.

*The Assault*

One night around 1:00 a.m., Bryant told K.G. that his cousin wanted to see C.J., and he asked if they could come over. K.G. agreed, and Bryant and his cousin arrived approximately an hour later. When they arrived, a dog began barking, and K.G.'s grandmother awoke. C.J. took the two men to the garage, where they hid for approximately 30 minutes until the grandmother went back to sleep.

At trial, K.G. said that Bryant "pulled" her into the garage, where he kissed and fondled her, while their cousins were together inside the house. She testified that Bryant contacted her "private area" with his mouth and penetrated it with his tongue while they were in the garage and later when they were inside the house and their cousins were in the garage. K.G. testified that although she felt uneasy about the sexual contact, she did not say "no." She said that at one point Bryant asked her if she wanted him to stop, and she declined. However, K.G. also testified that she never intended to engage in sexual contact with Bryant.

A few days later, while watching a sex scene in a movie, C.J. told her grandmother that she had sex in the house a few days earlier. The girls' grandmother questioned them about the incident and sent K.G. home to her parents. K.G. was interviewed at the Children's Advocacy Center, where she said that it hurt when Bryant penetrated her with his tongue. Bryant was later charged with aggravated sexual assault of a child.

*The Investigator's Testimony*

A Tyler Police Department investigator investigated the assault. The investigator testified that he was a certified police officer assigned to the Crimes Against Children Unit of the Major Crimes Department. He testified that he had been conducting police investigations for two years and four months and that he had received "lots of specialized training ... hundreds of hours of everything from child abuse to child sex crimes to neglect. Anything to do with a child being under 17 years old, I typically deal with that." He testified that he had seen interviews of approximately 100 children in the two years preceding trial. The investigator testified without objection that, under Texas law, a 13–year–old cannot consent to sex. The State questioned him, over Bryant's objections, about how an adult might "groom" a child prior to a sexual assault.

Bryant's trial counsel cross-examined the investigator about discrepancies between the investigator's affidavit and statements by K.G. in her interview and her trial testimony. On redirect, the State asked a series of questions about the affidavit. When the State asked for the investigator's conclusion about whether an assault had occurred, Bryant objected, and the trial court overruled the objection. The investigator then testified, "Yes, I did come to the conclusion that a sexual assault had occurred."

*Alibi Evidence*

Bryant, however, attempted to paint a different picture by offering alibi witnesses. Bryant's roommate testified that she and a coworker borrowed Bryant's car

on the night in question. Both women testified that on the night they borrowed his car, Bryant was babysitting their five children who ranged in age from infancy to 13 years old. Both recalled that night because Bryant's car was not working properly and they had to push it into a parking space. The roommate's coworker specifically remembered that it was a Tuesday night and testified that she did not work the following night. On cross-examination, the State confronted her with a calendar, which showed that the night in question was a Wednesday, not a Tuesday, undermining Bryant's alibi. Yet another coworker who testified she saw the women struggling with the malfunctioning car also testified that these events occurred on a Tuesday night.

The State cross-examined the roommate and her coworker about why they did not come forward with the alleged babysitting alibi information before trial, and both women said they did not know or they did not know whom to contact. In rebuttal, the State recalled the police investigator, who testified that he spoke to the roommate, that she told him his phone number at the Children's Advocacy Center appeared on her caller ID, and that neither Bryant nor the roommate returned his call. Bryant's attorney objected to the question about whether Bryant ever called the investigator, arguing that the question violated Bryant's Fifth Amendment rights, and the trial court overruled the objection.

*Closing Argument*

In closing argument, the prosecutor repeatedly referred to Bryant as a "preda-tor," without objection by defense counsel. The prosecutor also argued without objection that if K.G. and her cousin had "not given in to these two guys, they could have been hurt." He said, "[T]hese guys ... were going to do it whether they allowed them to do it or not." The prosecutor also suggested that Bryant may have committed a previous assault.

The jury found Bryant guilty of aggravated sexual assault of a child, and he appeals from that conviction.

## EXPERT OPINION TESTIMONY ABOUT "GROOMING"

■ In his first issue, Bryant argues that the trial court erred by admitting the investigator's testimony regarding grooming of a prospective child victim of sexual assault. Bryant argues that the investigator was not qualified to offer this testimony because he lacked sufficient depth of experience and training to support an expert opinion.[2]

*Standard of Review*

■ We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Layton v. State,* 280 S.W.3d 235, 240 (Tex.Crim.App.2009); *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). As particularly relevant to the issue raised in this appeal, a trial court's determination that a witness is or is not qualified to testify as an expert is afforded great deference. *Davis v. State,* 313 S.W.3d 317, 350–51 (Tex.Crim.App. 2010); *Rodgers v. State,* 205 S.W.3d 525,

---

**2.** Relying upon *Dunnington v. State,* 740 S.W.2d 896 (Tex.App.-El Paso 1987, pet. ref'd), Bryant's appellate brief also raises the issue that opinion testimony about grooming was "neither needed nor permissible." However he objected at trial only to the scope of the investigator's qualifications and expertise. An initial objection that "the jury is the fact-finders of this case" was not preserved throughout the line of questions concerning grooming. Accordingly, Bryant's other challenges to the admissibility of expert opinion testimony about "grooming" have been waived. *See* Tex.R. Evid. 103(a)(1); Tex.R.App. P. 33.1(a).

527–28 (Tex.Crim.App.2006). Such rulings will rarely be disturbed by an appellate court. *Vela v. State*, 209 S.W.3d 128, 136 (Tex.Crim.App.2006); *Rodgers*, 205 S.W.3d at 528 n. 9. As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton*, 280 S.W.3d at 240 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990)).

*Qualifications Necessary to Provide Expert Opinion Testimony*

▇▇ Rule 702 of the Texas Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. The qualifications of an expert witness are distinct from the reliability and relevance of the opinion testimony and, therefore, they should be evaluated independently. *Vela*, 209 S.W.3d at 131. The evaluation of an expert's qualifications entails a two-step inquiry: "[a] witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background 'goes to the very matter on which [the witness] is to give an opinion.' " *Id.* (quoting *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex.1996)). To be qualified to give expert opinion testimony, the witness "must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental." *Davis*, 313 S.W.3d at 350.

▇▇ In *Rodgers v. State*, the Court of Criminal Appeals outlined three criteria to be used in assessing whether a trial court has clearly abused its discretion in ruling on an expert's qualifications. These include (1) whether the field of expertise is complex; (2) how conclusive the expert's opinion is; and (3) the centrality of the area of expertise to the resolution of the lawsuit. 205 S.W.3d at 528. In considering these criteria, "the appellate court must review the trial court's ruling in light of what was before that court at the time the ruling was made." *Id.* at 528–29 (citing *Weatherred*, 15 S.W.3d at 542).

*Analysis*

The officer whose opinion testimony is at issue testified that he was the lead investigator in K.G.'s case. At the time of trial he had been conducting investigations for the Tyler Police Department for two years and four months while assigned to a unit dedicated to investigating crimes against children. He said that he was the primary investigator for all crimes against a child aged 17 and younger and he had seen close to 100 interviews of children. In order to become a certified peace officer, he testified that he was required to attend an academy that lasted approximately 20 weeks and pass a test of the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE).[3] Since being hired by the

---

**3.** "TCLEOSE sets the minimum standards for enrollment, examination, and licensure relevant to becoming a Texas peace officer." *State v. Collazo*, 264 S.W.3d 121, 125 (Tex. App.-Houston [1st Dist.] 2007, pet. ref'd). TCLEOSE's minimal standards for initial licensure provide:

A person must successfully complete the minimum training required for the license sought:
 (1) training for the peace officer license consists of:
 (A) the current basic peace officer course;

Tyler police, the investigator testified that he had received "hundreds of hours" of additional training in "everything from child abuse to child sex crimes to neglect." He also specifically testified that he was "trained in conferences and all kinds of different training" about grooming.

Bryant objected when the investigator was asked about how an adult might "groom" a child prior to a sexual assault. The objection was overruled, and the investigator proceeded to testify about the process by which an older man could establish a rapport with a young girl and manipulate her into engaging in sex. We set forth the relevant questions, objections, and responses in their entirety:

STATE: ... [T]hrough your training and experience in cases like this where you have a young child and an older man, is it unusual for the man to offer to take her places or offer to talk about different things, singing on the phone, that kind of thing? Is that unusual?

DEFENSE COUNSEL: Judge, I'm going to object to discuss[ing] other cases. It's outside his expertise, Your Honor. Also, the jury is the fact-finders of this case, Your Honor.

TRIAL COURT: They are the fact-finders of the case, but this is—according to the detective's testimony and experience and a detective in this area, I'm going to allow him to give his opinion.

Go ahead, Detective.

WITNESS: Based on the cases that I've worked and my training and experience, I find that in a situation like this, where you have a young girl and an older man, there tends to be things like that going on. They try to find—the older adult—it doesn't necessarily have to be a man—the older adult tries to find something in common with the younger child so that they can make a connection.

STATE: Why do they do that?

DEFENSE COUNSEL: Your Honor, I'm going to renew my objection. Again, Judge, that's outside his expertise.

THE COURT: The Court's ruling is the same. The objection overruled.

Go ahead, Detective.

WITNESS: We're trained in conferences and all kinds of different training that it's called grooming, a term they use.

They use it for online—online grooming is where they build rapport with the child, and they become more friendly and more friendly. And over time, they build a relationship, and then they're able to move further into it. And then it becomes a sexual relationship.

STATE: And what is a person that's trying to manipulate a young girl to finally have contact—what kind of rapport do they have to build with them?

(B) a commission recognized, POST developed, basic law enforcement training course, to include:
(i) out of state licensure or certification; and
(ii) submission of the current eligibility application and fee; or
(C) a commission approved academic alternative program, taken through a licensed academic alternative provider, and after September 1, 2003, at least an associate's degree.

(2) training for the jailer license consists of the current basic county corrections course(s);
(3) training for the public security officer license consists of the current basic peace officer course; and
(4) passing any examination required for the license sought while the endorsement remains valid.
37 Tex. Admin. Code § 217.1(e) (2010).

DEFENSE COUNSEL: Judge, again, it's going outside his expertise. Judge, I'm going to object.

THE COURT: All right. The Court's ruling is the same. The objection is overruled.

You may answer, Detective.

WITNESS: Children are all different. Sometimes it may take a lot of rapport-building with them; sometimes it may take a little bit. So that person will have to develop enough security where they can feel comfortable to move on to the next level.

. . . .

STATE: And one last question: Is it unusual for somebody like the defendant here to be able to manipulate a young girl, who's never even had sex before, into doing something she wouldn't ordinarily do?

DEFENSE COUNSEL: Judge, I'm going to object. It goes outside his expertise, not a psychiatrist or a psychologist, talking about manipulation, Your Honor. I'm going to object.

THE COURT: The objection is overruled.

Go ahead, Detective. Have you got the question?

THE WITNESS: I think I need the question again.

THE COURT: Restate it. . . .

STATE: Is it unusual in this kind of situation for a predator to manipulate a young girl into doing something they wouldn't ordinarily do?

THE WITNESS: It's not unusual at all. Grooming is a common technique used. There's plenty of research on it, and it's common.

Most people are not going to walk in and be able to automatically move into a sexual relationship with a child. So you have to have some kind of manipulation to begin with. So it's very common for this to occur.

 Applying the criteria discussed in *Rodgers,* we conclude that the trial court did not abuse its discretion by overruling the objections to the investigator's qualifications to testify. First, as applied to this particular testimony, the field of the witness's expertise was not particularly complex. "The degree of education, training, or experience that a witness should have before he can qualify as an expert is directly related to the complexity of the field about which he proposes to testify." *Rodgers,* 205 S.W.3d at 528 (citing *Broders,* 924 S.W.2d at 153; *Perez v. State,* 113 S.W.3d 819, 831–34 (Tex.App.-Austin 2003, pet. ref'd)). The testimony quoted above establishes that the investigator did not purport to perform any particularly specialized analysis of the relationship and interactions between Bryant and K.G. He merely related that his training had familiarized him with the concept of grooming— at bottom a relatively common-sense proposition that an adult must establish some level of rapport with a child before being able to manipulate the child into engaging in sexual conduct—and that he had observed similar and consistent circumstances in his own experience investigating crimes involving children. As noted in *Rodgers,* "[i]f the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Id.; see also Davis,* 313 S.W.3d at 350. That was the case here.

Second, the investigator's testimony about grooming was not conclusive of anything. It served the function of providing background information to the jury, rather than offering an opinion that, if accepted by the jury, might resolve any material issue in the case.

Finally, within the context of all the evidence presented, this testimony was not particularly central to determining Bryant's guilt or innocence. The discussion of grooming served to provide some explanation to the jury of the significance of the numerous telephone calls between Bryant and K.G. and how they may have empowered Bryant to take advantage of the child. But that testimony was conclusive of nothing directly relevant to the elements of the charged crime of aggravated sexual assault. To decide the question of Bryant's guilt or innocence, the jury had to evaluate the credibility of the witnesses. The information about grooming could have influenced the jury's credibility determinations, but only in an indirect fashion.

We therefore hold that the trial court did not abuse its discretion by overruling Bryant's objections to the qualifications of the police investigator to testify about grooming, and we overrule Bryant's first issue.

## TESTIMONY ABOUT WHETHER AN OFFENSE OCCURRED

Bryant's counsel cross-examined the police investigator about details that were omitted from the affidavit he prepared to obtain a warrant for Bryant's arrest. On redirect, the State questioned the investigator about all the details he included in that affidavit. In that context, the investigator testified that at the time he prepared his affidavit, he had concluded a sexual assault had occurred. In his second issue, Bryant asserts that the trial court erred by admitting the investigator's testimony that he concluded a sexual assault had occurred. Bryant argues that this testimony supplanted the jury by testifying that "science, experience, and training have reached the conclusion of guilt in this case."

*Preservation of Error*

■■■ The State contends that Bryant waived this issue by making only a general objection. Bryant's trial counsel objected to the State's question as to what conclusion the investigator reached based on his investigation.

DEFENSE COUNSEL: Judge, I'm going to object, because on Billy Long versus State of Texas out of the Twelfth Court of Appeals of this court says you can't do that, Your Honor.

TRIAL COURT: [I]f you want to make a legal argument, you need to make it to the Court.

DEFENSE COUNSEL: I object, Your Honor.

TRIAL COURT: If you want to make a legal argument up here at the bench, you can. The jurors are probably not too familiar with Billy Long.

DEFENSE COUNSEL: I know the Court is aware of it.

TRIAL COURT: I am familiar with it, but the objection is overruled. . . .

■■■ To preserve a complaint for appellate review, a party must have presented a timely request, objection, or motion stating the specific grounds for the ruling desired, unless the grounds are apparent from the context of the objection. Tex.R.App. P. 33.1(a). Ordinarily, a general objection preserves nothing for review. *Safari v. State*, 961 S.W.2d 437, 442 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd, untimely filed). "There are, however, no technical considerations or form of words that must be used to preserve error so long as the objection sufficiently apprises the trial court and opposing counsel of the nature of the complaint." *Id.* (citing *Ex parte Little*, 887 S.W.2d 62, 65 (Tex.Crim. App.1994)). "A general or imprecise objection may be sufficient to preserve error for appeal, but only if the legal basis for

the objection is *obvious* to the court and to opposing counsel." *Buchanan v. State,* 207 S.W.3d 772, 775 (Tex.Crim.App.2006) (emphasis original).

Bryant's counsel objected based on "Billy Long versus State of Texas out of the Twelfth Court of Appeals." In *Long v. State,* the defendant argued that the trial court erred in allowing an expert witness to testify as to whether the complainant had testified truthfully. *Long v. State,* No. 12–07–00256–CR, 2008 WL 5050099, at *5 (Tex.App.-Tyler Nov. 26, 2008, no pet.). The court of appeals noted that an expert may not testify that a witness is truthful. *Id.* at *4 (citing *Yount v. State,* 872 S.W.2d 706, 712 (Tex.Crim.App.1993) and *Lane v. State,* 257 S.W.3d 22, 27 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd)). The court also noted that although an expert may testify about signs of coaching, coercion, or suggestion, the expert may not testify that those signs are present in the case being considered by the jury or that the complainant's allegations are the result of manipulation or fantasy. *Id.* (citing *Schutz v. State,* 957 S.W.2d 52, 69–70 (Tex. Crim.App.1997)).

The State argues that Bryant's counsel made only a general objection and did not preserve anything for our review. However, the trial court twice acknowledged that it was familiar with *Long.* In this context, we conclude that the specific grounds for Bryant's trial court objection, i.e., that the witness could not offer an opinion about the truthfulness of K.G.'s outcry, were apparent to the court and opposing counsel based on the context. *See* Tex.R.App. P. 33.1(a). Reference to precedent without further explanation may not always be sufficient to preserve error, but in this case, the trial court twice stated that it was familiar with *Long.* We hold that Bryant's issue is not waived.

*Ultimate Issue Testimony*

 "Expert testimony does not assist the jury if it constitutes a 'direct opinion on the truthfulness' of a child complainant's allegations." *Schutz v. State,* 957 S.W.2d at 59 (quoting *Yount,* 872 S.W.2d at 708). Testimony by an expert witness, however, that provides useful background information to aid the jury in evaluating the testimony of another witness is admissible. *See id.* Opinion testimony that is otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact. Tex.R. Evid. 704; *Ex parte Naylor,* 149 S.W.3d 125, 134 (Tex.Crim.App. 2004) (describing officer's testimony that defendant had not been attacked); *Solomon v. State,* 49 S.W.3d 356, 364 (Tex. Crim.App.2001) (holding that lay witness properly offered opinion regarding defendant's criminal responsibility). The admissibility of such testimony is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *See Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App.1993); *see also Conner v. State,* 891 S.W.2d 668, 670 (Tex.App.-Houston [1st Dist.] 1994, no pet.).

 On cross-examination, Bryant's trial counsel questioned the police investigator about discrepancies among his affidavit, K.G.'s interview, and K.G.'s trial testimony. On redirect examination, the prosecutor asked the investigator a series of questions connecting K.G.'s interview statements to statements in his affidavit. After the trial court overruled Bryant's objection, the investigator testified that he came to the conclusion a sexual assault had occurred and that is why he prepared an affidavit to obtain an arrest warrant.

 This appeal is distinguishable from *Long.* In *Long,* the expert testified that she testified only in cases in which she

believed the complainant. *Long*, 2008 WL 5050099, at *5–8. In contrast, in this appeal, the police investigator testified about what he relied upon to determine whether he should swear out an affidavit to obtain a warrant for Bryant's arrest. That testimony about the factual background of a criminal investigation was materially different from offering an opinion at trial that a child witness is telling the truth.[4] We overrule Bryant's second issue.

## TESTIMONY ABOUT BRYANT'S FAILURE TO CONTACT POLICE

 In its rebuttal case, the State asked the police investigator, "Now, at any time, did you get a call from Mr. Bryant?" In his third issue, Bryant argues that the trial court erred by overruling his objection to this question, which he argues constituted a comment on his invocation of his Fifth Amendment right to remain silent.

 To preserve error in admitting evidence, a party must make a proper objection and obtain a ruling on that objection. TEX.R.APP. P. 33.1(a)(1)-(2); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004). An appellant must object to each instance in which the objectionable testimony is elicited. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991); *Thierry v. State*, 288 S.W.3d 80, 88 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd).

During the State's case-in-chief, the police investigator testified that he called Bryant's roommate and left a message with her that he needed to speak with Bryant. The State asked, "Did Mr. Bryant ever contact you?" Defense counsel did not object, and the investigator replied, "I never spoke with Mr. Bryant." Because the same evidence, that Bryant did not contact or call the investigator, was previously admitted without objection, Bryant waived any issue with respect to the subsequent question during the State's rebuttal case. *See Ethington*, 819 S.W.2d at 858; *Thierry*, 288 S.W.3d at 88. We overrule Bryant's third issue.

## MOTION FOR MISTRIAL

 In his fourth issue, Bryant argues that the trial court erred by failing to grant a mistrial following improper closing argument by the State.

### Standard of Review

 We review a trial court's ruling on a motion for mistrial for abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App.2007). We must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App.2004). A trial court may properly exercise its discretion to declare a mistrial if a verdict of conviction could be reached, but would have to be reversed on appeal due to an obvious pro-

---

4. Even if the trial court erred in admitting this testimony, such error would be harmless. Because this is nonconstitutional error, we would reverse only if this error had a substantial and injurious effect or influence on the jury's verdict. *See* TEX.R.APP. P. 44.2(b). "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim.App.2008) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998)). The jury heard K.G. testify and watched the videorecording of her interview at the Children's Advocacy Center. And Bryant's defense of alibi relied on witnesses who swore that they borrowed his car the night before the incident occurred. Examining the record as a whole, we conclude that any error in admitting the investigator's testimony that he concluded an assault occurred is harmless.

cedural error in the trial. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Hernandez v. State,* 805 S.W.2d 409, 413–414 (Tex.Crim.App.1990).

*Jury Argument*

 Contested jury argument must be extreme or manifestly improper to constitute reversible error. *Sandoval v. State,* 52 S.W.3d 851, 857 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). In general, proper jury argument encompasses one of the following: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to the opposing counsel's argument; and (4) pleas for law enforcement. *Id.; Guidry v. State,* 9 S.W.3d 133, 154 (Tex.Crim.App.1999). In most cases, if error occurs, an instruction to disregard will cure any error committed. *Shannon v. State,* 942 S.W.2d 591, 597 (Tex.Crim.App. 1996); *Cole v. State,* 194 S.W.3d 538, 544 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

 Improper jury argument does not result in reversible error that warrants a mistrial unless the trial court's instruction to disregard would not cure any resulting harm. *Lucero v. State,* 246 S.W.3d 86, 101 (Tex.Crim.App.2008). We consider three factors when assessing the impact of the harm arising from jury-argument error: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Berry v. State,* 233 S.W.3d 847, 858–59 (Tex. Crim.App.2007).

*Analysis*

During closing argument, the prosecutor suggested that Bryant may have committed prior sexual assaults:

STATE: There's no doubt that it happened. There's nothing to gain. [K.G.] doesn't gain anything out of this and would just as soon as not have been here. But that's what makes this so scary. You've got a predator, the way it was done. I submit to you, Ladies and Gentlemen, *I hope this is the first time.* I don't know.

DEFENSE COUNSEL: Judge, I'm going to object. That's an improper argument, Your Honor.

TRIAL COURT: All right. The Court sustains the objection.

DEFENSE COUNSEL: Judge, we move for a mistrial.

TRIAL COURT: That's denied.

DEFENSE COUNSEL: Instruct the jury to disregard.

TRIAL COURT: I'll sustain the objection. The jury will be instructed to disregard the last comment of the prosecutor.

(Emphasis supplied.)

First, the prosecutor's comment does not amount to severe misconduct. He did not positively assert that Bryant had committed prior offenses or disclose any known prior bad acts. Although the prosecutor inappropriately speculated, he did not repeat the statement after Bryant objected. Second, the trial court instructed the jury to disregard the argument, and, in the absence of evidence to the contrary, we presume that the jury heeded the trial court's instruction to disregard. *See Colburn v. State,* 966 S.W.2d 511, 520 (Tex. Crim.App.1998). Third, as to the strength of the evidence supporting the conviction, we note that K.G. testified unequivocally

that Bryant committed each element of aggravated sexual assault. Her testimony, standing alone, is sufficient to support Bryant's conviction for aggravated sexual assault of a child. TEX.CODE CRIM. PROC. ANN. § 38.07; *see Jensen v. State*, 66 S.W.3d 528, 534 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (stating that testimony of victim, standing alone, even when victim is child, is sufficient to support conviction for sexual assault). Bryant's defense consisted of alibi testimony that the jury was free to disbelieve based upon credibility determinations or questions raised in cross-examination about the dates of the offense and the alibi.

After examining the State's jury argument in light of these factors, we hold that the prosecutor's comments were inappropriate but insufficient to warrant disturbing the trial court's discretion to deny a new trial. We overrule Bryant's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.