**Opinion issued February 14, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NOS. 01-18-00436-CR & 01-18-00437-CR

————————————

**WILLIE HUBBARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 211th District Court**
**Denton County, Texas**
**Trial Court Case Nos. F17-1245-362 & F17-1246-362**

---

**MEMORANDUM OPINION**

Willie Hubbard was convicted by a jury for one count of continuous sexual

abuse of a young child[1] and two counts of aggravated sexual assault of a child.[2] For

---

[1]     *See* TEX. PENAL CODE § 21.02(b).

[2]     *See id.* § 22.021(a).

each of the three counts, the jury assessed punishment at confinement for life and a $10,000 fine, and the trial court's judgments ordered the sentences to run consecutively. Hubbard contends that the evidence was insufficient to support his convictions. We affirm.

## Background

The children D.B. and O.H. are biological daughters of W. Blaylock. D.B., the older of the two, was born to Blaylock while she was dating Hubbard, and he acted as D.B.'s stepfather from the time of her birth. O.H. is Hubbard's biological child. Blaylock and Hubbard went on to have other children. D.B., O.H., Blaylock, Hubbard, and the other children all lived together in California before moving to Texas in late 2015. Upon moving to Texas, they lived together in a two-bedroom suite in Lewisville.[3]

## I.  Acts involving D.B.

According to D.B. and O.H., during their time living in the suite, Hubbard sexually abused them many times. D.B. was under 14 years old at the time.

---

[3] Pursuant to the Supreme Court of Texas's docket-equalization powers, this appeal was transferred from the Second Court of Appeals to this court on May 30, 2018. *See* TEX. GOV'T CODE §§ 73.001–.002; Order Regarding Transfer of Cases from Courts of Appeals, Misc. Docket No. 18-9049 (Tex. Mar. 27, 2018). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this court on any relevant issue. *See* TEX. R. APP. P. 41.3.

After moving into the suite, and according to D.B., Hubbard continued to abuse her as he had when they lived in California. He made her put her mouth on what she described as his "pee area"—the body part that he urinates with. He would also put this body part into the part of her body that she urinates with and into the part of her body that she uses to "poop."

D.B. testified that, on one occasion, Hubbard called her into the room in the suite where he and Blaylock slept, and he told D.B. to remove her clothes and to put her mouth on his "pee area." Another time, Hubbard called D.B. into the room, told her to take her clothes off, and inserted "his pee area" into her "pee area."

D.B. testified that other similar acts occurred throughout their time living in the suite. The suite owner's records reflect that Hubbard and Blaylock checked in to the suite on November 5, 2015, and checked out on March 9, 2016. D.B. testified that instances of Hubbard making her put her mouth on his "pee area" happened numerous times during their stay in the suite and happened from the time they checked in until the time Hubbard left. She testified similarly as to the frequency of instances when Hubbard would insert his "pee area" into hers. Hubbard left the suite when he was arrested in February 2016 on suspicion that he was physically abusing Blaylock.

## II. Acts involving O.H.

O.H. was born in 2007 and was 10 years old at the time of trial.

O.H. testified about several instances of sexual assault by Hubbard. Once, after moving into the suite, Hubbard called O.H. into his room, told her to take off her clothes, and "st[u]ck his middle part in [her] middle part." She testified that her "middle part" is the body part that she uses "[t]o pee" and that Hubbard's "middle part" is the body part that Hubbard uses "[t]o use the restroom." She was nine years old when this happened. She testified that Hubbard did this to her about 10 to 20 times while they lived in the suite. Sometimes he gave her money after doing this, and other times he did not.

### III. The children report the abuse, leading to an investigation and Hubbard's indictment and conviction.

After moving to Lewisville, Blaylock and the children became acquainted with new people who encouraged D.B. and O.H. to report what Hubbard had done to them. As a first step, D.B. and O.H. were taken to be interviewed at the Children's Advocacy Center ("CAC") in Denton County.

The CAC is an agency independent of law enforcement and of Child Protective Services and aims to help investigate alleged crimes against children. S. Juarez, a forensic interviewer with the Denton County CAC, explained to the jury the forensic-interview process that she uses. CAC forensic interviewers are trained to interview children in order to investigate alleged crimes against the children. The CAC interview process also involves confirming that the children understand the difference between the truth and a lie and whether the children

promise to tell the truth. CAC forensic interviewers ask unbiased and non-leading questions that allow the children to say in their own words what, if anything, has happened to them. To prevent bias, CAC forensic interviewers enter into an interview without knowing any of the allegations involved.

Once the interview ends, the CAC gives the interview results to law enforcement or to CPS so they can make plans to keep the children safe and to meet their needs. Juarez testified that, sometimes, law enforcement takes no action after a CAC interview; other times, an investigation does move forward.

When D.B. was 13 years old, she underwent two CAC forensic interviews. Both followed all the conditions and parameters that Juarez testified were part of the CAC interview process. During the interviews, D.B. confirmed that she understood the difference between the truth and a lie, and she promised to tell the truth. She recounted the acts of sexual abuse that Hubbard committed against her. The results of the interview were given to law enforcement, which began a criminal investigation.

O.H., who was approximately nine years old at the time, also underwent a CAC forensic interview. It, too, followed the conditions and parameters for CAC interviews that Juarez described. During the interview, O.H. confirmed that she understood the difference between the truth and a lie, and she promised to tell the

5

truth. She described Hubbard's sexual abuse against her. The results of her interview also were given to law enforcement to investigate.

The jury also heard from J. O'Hare, a registered nurse. She has been a registered nurse for 15 years and is a certified "SANE," a sexual-assault nurse examiner. As a SANE, O'Hare "is specialized in performing a medical forensic examination" and often "testif[ies] as an expert witness." Attaining and maintaining SANE certification requires dozens of hours of coursework, specialized training, oversight by physicians, passing a written test, peer review of examination findings, and continuing education. O'Hare explained that the SANE examination involves the nurse's taking a patient history and examining the patient's genitalia, mouth, or anus for evidence of sexual assault, in part for treating the patient.

O'Hare examined D.B. and O.H. in January 2017. As part of the exams, O'Hare took a patient history from each girl about what Hubbard had done to her, for purposes of medical diagnosis and treatment. In the patient-history section of D.B.'s exam record, O'Hare wrote that D.B. told her that Hubbard "put his penis in [her] vagina" and made her "put [her] mouth on his penis." In the patient-history section of O.H.'s exam record, O'Hare wrote that O.H. told her that Hubbard "put his penis in [her] vagina." O.H. also told O'Hare that Hubbard "did this a lot of times to" her.

**Analysis**

Hubbard challenges the sufficiency of the evidence supporting his convictions for continuous sexual abuse of D.B. and for aggravated sexual assault of O.H.

## I.  Standard of review and applicable law

We review evidence-sufficiency challenges under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Lee v. State*, 537 S.W.3d 924, 926 (Tex. Crim. App. 2017); *Buentello v. State*, 512 S.W.3d 508, 515 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Under this standard, the evidence is sufficient to support a conviction if, considering the evidence in the light most favorable to the verdict, a rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The standard applies equally to both direct and circumstantial evidence. *See King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

There are generally four circumstances in which evidence is insufficient to support a conviction: (1) no evidence that is probative of an element of the offense exists in the record, (2) only a "modicum" of evidence that is probative of an

element of the offense exists, (3) the evidence conclusively establishes a reasonable doubt, or (4) the alleged acts do not establish the criminal offense charged. *See Buentello*, 512 S.W.3d at 515 (citing *Jackson*, 443 U.S. at 314, 320; *Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750).

We do not weigh evidence or evaluate witness credibility; those are for the factfinder. *See Williams*, 235 S.W.3d at 750. Instead, we determine whether the explicit and implicit findings of the factfinder are rational by viewing all the evidence in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *See Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992); *Buentello*, 512 S.W.3d 515–16.

A person commits the offense of continuous sexual abuse of a young child when, during a period thirty or more days in duration, the person commits at least two acts of sexual abuse against a child younger than 14 years of age while the person is at least 17 years of age at the time of each of the acts. *See* TEX. PENAL CODE § 21.02(b). For these purposes, an act of sexual abuse includes an aggravated sexual assault under Penal Code section 22.021. *See id.* § 21.02(c)(4).

A person commits the offense of aggravated sexual assault of a child when both (1) the person intentionally or knowingly either causes the sexual organ of a child to contact the person's sexual organ or causes the mouth of a child to contact

8

the person's sexual organ and (2) the victim is younger than 14 years of age. *See id.* § 22.021(a)(1)(B)(iii), (a)(1)(B)(v), (a)(2)(B).

Victim testimony does not require corroboration in prosecutions under Penal Code chapter 21 or section 22.021 when, as here, the victim was under 17 years of age at the time of the offense. *See* TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1); *Bryant v. State*, 340 S.W.3d 1, 14 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

## II. Continuous sexual abuse of D.B.

D.B. testified that Hubbard committed numerous acts of sexual abuse against her during the roughly two-month period that they lived in the suite in Lewisville. During that period, D.B. was under 14 years old, and Hubbard was over 17 years old.

D.B. testified that, after the family moved to Texas, Hubbard, as he had done while they lived in California, made her put her mouth on the body part of his that he urinates with. He also would put this body part into the part of her body that she urinates with and into the body part that she uses to "poop."

D.B. testified that Hubbard once called D.B. into his room and told her to remove her clothes and to put her mouth on his "pee area." Another time, Hubbard called D.B. into the room, told her to take her clothes off, and inserted "his pee area" into her "pee area."

D.B. testified that Hubbard made her put her mouth on his "pee area" numerous times during their stay in the suite, and those assaults happened from the time the family checked in to the suite until the time Hubbard left. Instances of Hubbard assaulting her by inserting his "pee area" into hers occurred about as frequently.

During her CAC interview, D.B. confirmed that she understood the difference between the truth and a lie and that she promised to tell the truth. She described acts of sexual abuse committed by Hubbard against her.

D.B. later underwent a SANE exam. The exam records show that D.B. told the examining nurse that Hubbard "would put his penis in [her] vagina" and would make her "put [her] mouth on his penis."

We will not second-guess the jury's decision to find D.B.'s testimony credible. *See* TEX. CODE CRIM. PROC. art. 38.07 (providing that uncorroborated testimony of child victim suffices to support conviction for offense under Penal Code chapter 21, which includes offense of continuous sexual abuse of a child); *Williams*, 235 S.W.3d at 750. A rational juror could have found beyond a reasonable doubt that, during the several months the family lived in the suite, Hubbard committed two or more acts of aggravated sexual assault against D.B. *See* TEX. PENAL CODE §§ 21.02(b)–(c), 22.021(a)(1)(B)(iii), (a)(1)(B)(v), (a)(2)(B); *Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750.

Accordingly, viewing the evidence in the light most favorable to the verdict, we hold that sufficient evidence supports the jury's verdict finding Hubbard guilty of continuous sexual abuse of a young child.

## III.    Aggravated sexual assault of O.H.

O.H. testified that Hubbard sexually assaulted her several times after the family moved into the suite. Once, when O.H. was nine years old, Hubbard called her into his room, told her to take off her clothes, and "st[u]ck his middle part in [her] middle part." O.H. testified that Hubbard did this to her about 10 to 20 times while they lived in the suite. Hubbard sometimes, but not always, gave O.H. money after he "put his middle part inside [her] middle part."

In her CAC forensic interview, O.H. confirmed that she understood the difference between the truth and a lie and that she promised to tell the truth. She described acts of sexual abuse committed by Hubbard against her.

O.H. later underwent a SANE examination. In the patient history section of the exam record, the examining nurse wrote that O.H. said that Hubbard "put his penis in [her] vagina" and that he did so "a lot of times."

The jury, as the sole judge of a witness's credibility, could choose to believe O.H. and credit her testimony. *See* TEX. CODE CRIM. PROC. art. 38.07 (providing that uncorroborated testimony of child victim suffices to support conviction for offense under Penal Code section 22.021); *Williams*, 235 S.W.3d at 750. A rational

juror could have found beyond a reasonable doubt that, on two occasions, Hubbard intentionally or knowingly caused O.H.'s sexual organ to contact his and that O.H. was younger than 14 at the time of each sexual assault. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(iii), (a)(2)(B); *Jackson*, 443 U.S. at 319; *Laster*, 275 S.W.3d at 517; *Williams*, 235 S.W.3d at 750. Accordingly, viewing the evidence in the light most favorable to the verdict, we hold that sufficient evidence supports the jury's verdict finding Hubbard guilty of two counts of aggravated sexual assault of a child under 14 years of age.

## Conclusion

We affirm the judgment of the trial court.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).