COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| REFUGIO BUSTAMANTE, | § | |
| | | No. 08-17-00262-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 384th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20160D04477) |
| | § | |

## MEMORANDUM OPINION

A jury found Appellant, Refugio Bustamante, guilty of the felony offense of aggravated sexual assault of a child[1] and assessed his punishment at confinement for thirteen years. In his sole issue, Appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

### Background

The complainant testified that she was thirteen years old when she and her sister, who was seven years old, traveled to El Paso in July 2015 to visit Appellant, her once stepfather and her sister's father. They stayed several days at the house of his mother, "Buela," with her, Appellant,

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

his niece, "Alexis," his sister, "Noemi," her boyfriend, her daughters, "Amy" and "Ceci," and her son, "Juan." Given the number of people staying in the house, the complainant, her sister, and Appellant spent the nights sleeping on the same "blow-up" bed in the living room.

On July 26, 2015, the complainant, wearing underwear, shorts, a sports-bra, and a shirt, fell asleep at about 8:30 p.m. on the bed in the living room while she was on her telephone and Appellant was watching television. Her sister spent that night in another room with Amy, Noemi, and Noemi's boyfriend.

Later, the complainant "woke up to [Appellant's] hand in -- under [her] clothing." "[B]reathing heavily," he had placed two of his fingers "[i]n [her] vagina." And she actually felt his fingers "inside" her vagina. When the complainant woke up, she "tried moving"; however, Appellant grabbed her left leg "and put it on top of his leg."

Ultimately, the complainant "stood up and ran to the restroom." She locked the door, washed her face, and stayed in the restroom for five minutes. The complainant then went "back to bed," where she "was in and out of sleep." She did not tell anyone in the house about what Appellant had just done to her because "[t]hey're his family" and she "didn't know if he would do something or his family would believe" her.

The complainant further testified that at about 5:00 a.m., Appellant woke her, asking her "to give him a kiss goodbye" before he left to go to work. She then covered her face because she did not want to see him or kiss him. After Appellant had left for work, the complainant went back to sleep. At about 7:00 or 8:00 a.m., the complainant again awoke. She then took a shower because she "didn't feel clean." And she "couldn't eat."

After taking a shower, the complainant telephoned her mother to tell her what Appellant had done to her. Her mother then made arrangements for the complainant's grandfather to pick

2

up the complainant and her sister. She and her sister then gathered all of their clothing and things. And after her grandfather picked them up, he took them to a police station. He then took the complainant to a hospital where she was examined.

Ysais Almeraz testified that on the morning of July 27, 2015, his daughter telephoned him and asked him to pick up the complainant and her sister from Appellant's home. When he arrived at 11:30 a.m., he found the complainant and her sister waiting for him in the front yard. The complainant "was very upset, like on the verge of tears." Almeraz then drove the complainant, who was "crying in the car," to a police station, where she met with a police officer. And Almeraz subsequently took the complainant to a hospital, where she was examined "and they did some tests. . . . Several tests, as a matter of fact." After she was released from the hospital at about 9:00 p.m., Almeraz took the complainant and her sister to his home, where they stayed several days until their mother arrived to take them to their home. During this time, the complainant "wasn't herself. She was very depressed."

Kathleen Justice, a Sexual Assault Nurse Examiner, testified that on July 27, 2015, she met with and physically examined the complainant, who consented to the examination, at the Sierra Medical Center. The complainant told her what had "happened" and "how it happened." During the examination, Justice "did not see any injuries . . . in the genital area." However, she did see "a small amount of redness around the vaginal opening," and "that's all that [she] saw." And the complainant told her that she felt "some tenderness." When the State asked whether what she saw was "consistent" with what the complainant had told her, Justice answered, "Yes and no." She explained that from what she had observed, she could not state "conclusively from just some redness whether anything happened." Justice stated, "I have seen female minor patients come in with no injuries -- and that is what we see most are no injuries." And "not seeing any injuries" is

3

"not an indication" that a sexual assault did not happen. When asked why the "female anatomy, specifically the vaginal area" does "not illustrate or not show" injury in sexual cases, Justice further explained:

> Well, there are three reasons that I can think of right away. Of course, the first reason is that possibly the assault did not occur, and that's always a consideration. The second reason is that possibly an injury was done and the patient came to us after the injury had healed -- the genital area heals rapidly -- but this patient came to us the very same day that this happened. And so the other reason is that it just -- there was an assault and there was just no injury. And that can happen.

On cross-examination, Nurse Justice admitted that "the only evidence of sexual assault" is what the complainant said that Appellant did to her. The complainant told Justice, "I guess it was a while when I woke up and [Appellant's] hand was under my underwear and his finger was inside my vagina." The complainant further stated, "In the morning [Appellant] woke me up around 6:00 a.m. and said, 'I'm going to work,' and, 'Give me a kiss.' Then he went to work, and that's when I called my mom." Justice conceded that there was no injury to the complainant's hymen, the only physical injury that she found on the complainant was a bruise to her arm, and it was a "possibility" that there was no sexual assault.

Appellant presented Dr. Fausto Rodriguez, a staff pathologist at the Hospitals of Providence, who testified that he reviewed the report of Nurse Justice and photographs that she took of the complainant. He opined that it was "unlikely" that the redness observed near the complainant's vaginal opening indicated sexual assault. And he opined that if an adult male were to insert two fingers into the vagina of a thirteen-year-old girl, an examiner "would expect to see from redness to lacerations – or tears – or some bleeding, some bruising" and the hymen would not be "intact." Rodriguez further opined that although it was "possible" that Appellant had sexually assaulted the complainant, her lack of injuries made it "very unlikely" and was

4

inconsistent with her having been sexually assaulted.

## Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id*.

## Sufficiency of the Evidence

In his sole issue, Appellant argues that the evidence is legally insufficient to support his conviction because "no physical evidence was collected to indicate that a sexual assault had happened much less that a sexual assault was committed by" him. He asserts that "given the lack of physical evidence, the impossibility that the incident happened the way the victim said it happened makes guilt reasonably uncertain to a degree that the verdict should be set aside."

A person commits the offense of aggravated sexual assault of a child under the age of fourteen if the person "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means" and the complainant is "younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

Here, the complainant testified that on July 27, 2015, when she was thirteen years old, she "woke up to [Appellant's] hand in – under [her] clothing." "[B]reathing heavily," he had placed two of his fingers "[i]n [her] vagina." And she actually felt his fingers "inside" her vagina. A conviction under Section 22.021 "is supportable on the uncorroborated testimony" of a complainant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *Bryant v. State*, 340 S.W.3d 1, 14 (Tex. App.---Houston [1st Dist.] 2010, pet. ref'd) (stating child complainant's testimony, standing alone, sufficient to support conviction for aggravated sexual assault of child); *Sandoval v. State*, 52 S.W.3d 851, 854 & n.1 (Tex. App.---Houston [1st Dist.] 2001, pet. ref'd). Thus, from the complainant's testimony alone, the jury could have reasonably concluded that Appellant intentionally or knowingly caused the penetration of the sexual organ of a child under fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B).

Moreover, Nurse Justice testified that on July 27, 2015, the complainant reported to her that, "I guess it was a while when I woke up and [Appellant's] hand was under my underwear and his finger was inside my vagina." The complainant further stated, "[i]n the morning [Appellant] woke me up around 6:00 a.m. and said, 'I'm going to work,' and, 'Give me a kiss.' Then he went to work, and that's when I called my mom."

Regardless, Appellant argues that the evidence is legally insufficient because the complainant's testimony is not corroborated by physical evidence. In support of his argument, Appellant quotes the following from the Texas Court of Criminal Appeals opinion in *Lozano v. State*, "[t]he failure of the State to corroborate the prosecutrix as to [the defendant's] guilt, as also the failure of the prosecutrix to make outcry either at the time of the act or afterwards or to complain of pain in her privates, as a result of the act, are all facts that militate against the sufficiency of the State's case." 226 S.W.2d 118, 121 (Tex. Crim. App. 1950). He asserts that

6

"when the testimony viewed in its strongest light from the standpoint of the State fails to make guilt reasonably certain, the verdict should be set aside," citing *Green v. State*, 260 S.W. 195, 196 (Tex. Crim. App. 1924). And he requests that we "adopt" the standard articulated in *Green* in the instant case. However, the standard of review utilized in both *Lozano* and *Green* is woefully out of date and inconsistent with the legal-sufficiency standard of review now utilized in Texas criminal cases. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Williams*, 235 S.W.3d at 750. And, as noted above, the Texas Legislature has expressly stated that a conviction under Section 22.021 "is supportable on the uncorroborated testimony" of a complainant. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a). Accordingly, we decline to adopt the standard articulated in *Green* in the instant case.

The record shows that on July 27, 2015, Nurse Justice performed a physical examination of the complainant. Although Justice, during the examination, "did not see any injuries . . . in the genital area," such corroborating evidence is not required. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a)-(b); *Bryant*, 340 S.W.3d at 14. And Justice explained, "I have seen female minor patients come in with no injuries -- and that is what we see most are no injuries." And "not seeing any injuries" is "not an indication" that a sexual assault did not happen.

Appellant did present opinion testimony from Dr. Rodriguez that it was "unlikely" that the redness observed by Nurse Justice near the complainant's vaginal opening indicated sexual assault. He further opined that if an adult male were to insert two fingers into the vagina of a thirteen-year-old girl, an examiner "would expect to see from redness to lacerations – or tears – or some bleeding, some bruising" and the hymen would not be "intact." And Rodriguez did opine that the complainant's lack of injuries made it "very unlikely" that she had been sexually assaulted and was inconsistent with her having been sexually assaulted. However, the jury is the sole judge of

7

the facts, the credibility of the witnesses, and the weight to be given the witnesses' testimony. *See Williams*, 235 S.W.3d at 750.

In this case, the jury made the determination that the complainant's testimony was credible. We act only to ensure that the jury reached a rational decision. *See Moreno*, 755 S.W.2d at 867. Viewing the evidence in the light most favorable to the verdict, a rational trier-of-fact could have found beyond a reasonable doubt all the essential elements of the offense of aggravated sexual assault of a child under fourteen years of age. *See Williams*, 235 S.W.3d at 750. Accordingly, we hold that the evidence is legally sufficient to support Appellant's conviction.

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


September 25, 2019

TERRY JENNINGS, Senior Judge

Before Rodriguez, J., Palafox, J., and Jennings, Senior Judge
Jennings, Senior Judge (Sitting by Assignment)

(Do Not Publish)

8