**Opinion filed April 15, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00183-CR
_____

**THOMAS H. TECZAR, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 91st District Court**

**Eastland County, Texas**

**Trial Court Cause Nos. 20,006; 20,007; 20,008; & 20,009**

## M E M O R A N D U M   O P I N I O N

Appellant, Thomas H. Teczar, was indicted for three aggravated sexual assault offenses and one indecency with a child offense, all against the same victim, Billy Ray Swiney. At an earlier bench trial, appellant was convicted of the offenses; however, this court reversed the convictions and remanded for a new trial. *Teczar v. State*, No. 11-07-00075-CR, 2008 WL 4602547 (Tex. App.—Eastland 2008, no pet.) (mem. op., not designated for publication). This is an appeal from the second trial. After a jury trial, appellant was convicted and punishment was assessed at a term of fifty years confinement as to each aggravated sexual assault offense and

fifteen years confinement as to the indecency with a child offense, with a $10,000 fine assessed as to each offense. We affirm.

*Background Facts*

Appellant, Father Thomas H. Teczar, was the parish priest at Saint Rita's Catholic Church in Ranger. In 1990, when Billy Ray Swiney was eleven or twelve years old, he moved with his mother and sister into a house across from the Catholic Church. Soon after Swiney's arrival in Ranger, he met appellant and they became friends.

Patricia Swiney, Billy Ray Swiney's mother, managed a convenience store a few blocks away, and one of her employees was Daniel Hawley, who was in his late twenties. Unknown to Patricia Swiney, Hawley had engaged in promiscuous homosexual activity with underage boys for years. Before later learning of Hawley's sexual tendencies when officers investigated him in 1992 or 1993, Patricia Swiney thought Hawley was a nice person and a good employee, and she let her son stay overnight with Hawley. Hawley would take Swiney fishing, boating on Lake Leon, and shooting guns. Hawley would also allow Swiney to drive his car. It was not long after he arrived in Ranger that Swiney began spending most weekends at Hawley's house.

Patricia Swiney testified that, when she would take her son to Hawley's house, appellant would often be there. She also liked appellant and thought he would be a good father figure for her son and teach him the good things in life. She said that her son and appellant would do things together like fishing and that "[appellant] had a plane and they took [her son] flying."

In 1993, Hawley was arrested and then indicted for the aggravated sexual assault of Swiney. As a result of a plea bargain, Hawley pleaded guilty to aggravated sexual assault of Swiney and was sentenced to thirty-five years in prison in 1993. Hawley admitted at this trial that he had "groomed" Swiney with alcohol, marihuana, and pornographic movies. Not long after they met, Hawley convinced Swiney to have sexual relations, and they soon progressed to oral, anal, and manual sex. Hawley testified that his sexual involvement with Swiney started in 1989 or 1990 and continued until 1992.

Swiney testified that one time Hawley and he picked up appellant at the rectory and brought appellant to Hawley's house. Hawley was drinking Crown, and appellant was drinking Southern Comfort. According to Swiney, the three of them became "pretty well lit" and were watching pornographic movies. Hawley first gave anal sex to appellant. Appellant then asked Swiney to masturbate, and he put his hands on Swiney's penis and stroked it. Swiney said he

2

was masturbating while appellant and Hawley were having oral sex. A couple of weeks later, the three of them had another session at Hawley's house. Appellant had arranged for the three of them to go flying and paid for the ride. After flying, the three of them went to Hawley's house where appellant attempted to stick his penis in Swiney's anus. Even though appellant used some white jelly, Swiney asked him to stop because it hurt. Appellant did stop on that occasion but tried to do it again later; however, Swiney managed to avoid another penetration.

Swiney testified that he kept going back because he was hooked on marihuana and alcohol, which the two men provided him. He also liked shooting a gun and driving a car. Toward the end of July, appellant asked Swiney to give him oral sex; however, Swiney tried but just could not do it. Appellant, however, did give oral sex to Swiney. Swiney also testified that appellant would take Polaroid pictures of naked boys, some with an erection. Appellant took pictures of Swiney; Swiney saw a couple of them that were laying around at Hawley's house. Billy Bixler, David Perez, Andy Grumbles, and Jason Pattenaude would also come and go while the three of them were at Hawley's house.

Swiney also testified that he went to Lake Leon with appellant and Hawley. On one occasion, Tom Clark, Bixler, and Perez were also there. Sexual activities occurred in addition to boating and skiing. Although the boat belonged to Clark, appellant paid for the gas. Swiney testified that appellant told him not to tell anyone about their sex because other people would not believe him against the word of a priest. Swiney said that he realized he was "just a kid" and that appellant was a respected priest. Appellant would also use phrases from the Bible to justify what they were engaging in.

Hawley was the principal witness for appellant. Hawley admitted to his many sexual assaults against Swiney and against at least eight other young boys. He said he also told the officers after he was arrested that they should question a thirteen-year-old girl about whether Bixler, a friend of Hawley's, had sexually abused her. As a result of that investigation, Bixler pleaded guilty to aggravated sexual assault of the girl and was sentenced to thirty-four years in prison. Bixler was a rebuttal witness for the State in this trial.

Although Hawley did not mention appellant's involvement in sexual activities, officers investigating Hawley and Bixler contacted appellant at the church rectory. During one of the interviews, appellant admitted that Hawley and Bixler had told him about their sexual abuse of children. Appellant also admitted that he knew there were photographs of nude young boys and

3

said that he had advised Hawley and Bixler to get rid of them. When the officers asked for appellant's help in locating the photographs, appellant stated that he no longer wanted to be involved in the investigation. The officers began to suspect that appellant may have been involved in the sexual abuse. Hawley was indicted on March 18, 1993, and appellant wrote a letter dated March 19, 1993, to Bishop Delaney in which appellant resigned as a priest at Saint Rita's Catholic Church. Appellant also had packed his things and left the state on March 19, 1993. The officers made several attempts to gain information about appellant from the Diocese of Fort Worth, but the Diocese would not respond.

When Hawley pleaded guilty in 1993, his appointed lawyer was Steven R. Herod, who is now the District Judge of the 91st District Court. Judge Herod presided at appellant's initial bench trial and presided over the jury trial in this case. Appellant's principal issues on appeal concern whether he was entitled to call Judge Herod as a witness. Appellant wanted Judge Herod to testify that Hawley was also offered an alternative plea bargain involving a sentence of twenty-five years if Hawley would assist the district attorney in investigating possible sexual abuse of the same victim by appellant but that Hawley declined that offer because Hawley did not think that appellant had sexually assaulted Swiney. Hawley was allowed to testify about the two alternative plea offers but appellant wanted to bolster Hawley's credibility.

It is undisputed that Swiney did not mention appellant's sexual abuse of him when Swiney was interviewed by the officers in 1993. Swiney testified that he and his mother were taken to the Ranger Police Station to answer questions. The police put his mother in a separate room, and all Swiney could hear was her crying. He had never even heard his parents argue and thought he was in trouble. Swiney said that he was worried that he was about to be taken from his mother, just as appellant had said would happen if he told of their sexual activities. Swiney, who was twelve at the time, said that the police only asked him about what sexual things Hawley did to him. They did not ask about appellant, and he just answered the questions they asked.

Swiney told about his mother's subsequent nervous breakdown and how she spent time in the hospital after learning how he was abused by Hawley. Swiney said that he assumed that his mother's health problems were his fault. When asked why he remained silent about appellant's abuse for such a long period, Swiney explained that his mother had also had open heart surgery at some point and that he did not want her to be put through dealing with appellant's sexual

4

assaults against him after having gone through the problem of dealing with Hawley's assaults of him.

*Swiney's Civil Action and Appellant's First Trial*

A man named David Lewcon called Swiney in 2002, almost ten years after Hawley had been convicted of sexually assaulting Swiney. Swiney said that he hung up the first time but that Lewcon called again. Swiney decided to tell his story, discussed with his parents the alleged sexual assaults against him by appellant, and then told his story to an attorney recommended by Lewcon. Swiney said he contacted the attorney because he wanted appellant off the street so appellant could not hurt any other youngsters. The attorney took Swiney to see Texas Ranger David Hullum, who interviewed him. The attorney also filed a lawsuit on behalf of Swiney against the Diocese of Fort Worth of the Catholic Church. That lawsuit was settled sometime in 2005 with the Diocese paying Swiney $2.7 million.

While the civil action was pending, appellant was indicted on March 10, 2003, for the aggravated sexual assault offenses and the indecency with a child offense against Swiney. In appellant's first trial, the attorney who handled Swiney's civil action also served as a special prosecutor to assist the district attorney in prosecuting appellant. In appellant's appeal of the first trial, we held that her participation in the trial did not violate any principle of due process and presented no reversible error. *Teczar*, 2008 WL 4602547, at *3.

Appellant's current counsel represented him in appealing the conviction after the bench trial. Appellant challenged the admission of the testimony of Lewcon as an expert for the State in that trial and also contended that the trial court erred in admitting testimony by Lewcon that appellant had committed uncharged acts of sexual abuse against Lewcon when Lewcon was a child and against other children over a period of several decades. Lewcon had testified that, because he had been a victim of sexual abuse by appellant, he became a coach who acquired skills in identifying with clergy abuse victims; that he had operated a suicide hotline and had consulted with "between 50 to 100" victims of clergy abuse; and that he was a member and cofounder of the New England Chapter of the Survivors Network of those Abused by Priests. Lewcon had acquired coaching skills through seminars, which cost him a total of $4,000. Lewcon testified about the methods and practices of those who commit such abuse, the psychological consequences for the victims, and the reasons why victims such as Swiney might be reluctant to make outcry about such abuse, especially from an authority figure such as a priest.

5

Reversing and remanding for a new trial, we found that Lewcon lacked the qualifications to testify as an expert and that admission of Lewcon's testimony that appellant had committed uncharged acts of sexual abuse against him when he was a child was error. Because Swiney's testimony establishing the elements of the alleged crimes by appellant against him was not impeached, we held that Lewcon's testimony was inadmissible "bolstering" to support or reinforce the veracity of Swiney. *Teczar,* 2008 WL 4602547, at *7; *see State v. Ross*, 32 S.W.3d 853, 857 (Tex. Crim. App. 2000); *Rousseau v. State*, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993); *Koehler v. State*, 679 S.W.2d 6, 9-10 (Tex. Crim. App. 1984). In this trial, appellant wanted to "bolster" the testimony of Hawley that he turned down a plea with a lower punishment because he did not believe appellant had sexually abused Swiney.

*Pretrial Hearing on Appellant's Motion to Disqualify or Recuse Judge Herod*

Prior to this second trial, appellant filed a motion to disqualify or recuse Judge Herod. The motion was referred to the Honorable Jeff Walker, Presiding Judge of the Eighth Administrative Judicial Region. Judge Walker held a lengthy pretrial hearing on appellant's motion. Appellant made the same arguments before Judge Walker that he now makes on appeal before this court. At the hearing, Judge Herod testified that he had represented Hawley; that Leslie Vance was the district attorney; and that, during the plea negotiations, the district attorney had represented that he could bring additional charges against Hawley concerning incidents involving the same child. The questioning of Judge Herod ended with the following question and answer:

> [DEFENSE COUNSEL]: And was it your understanding that, as a result of plea negotiations, it was Mr. Vance's position that were Mr. Hawley to accept the plea offer that those charges would be abandoned and not brought against Daniel Hawley in the future?
>
> [JUDGE HEROD]: Right, they would not go forward on any of those charges.
>
> [DEFENSE COUNSEL]: Involving Daniel Hawley and Billy Ray Swiney?
>
> [JUDGE HEROD]: Yes.

Judge Herod was not asked at the hearing about any alternative plea that was offered to Hawley.

Subsequent to Judge Herod's testimony, defense counsel referred Judge Walker to testimony of Ranger Hullum and Swiney in the first trial that counsel maintained would support his position that Hawley would be a culpable party to appellant's offenses against Swiney. Counsel stated that virtually all of the incidents that "are alleged to form the basis of the prosecution were committed in the presence of Daniel Hawley, and/or at Daniel Hawley's house." Judge Walker read the portions of the record of the first trial and took judicial notice of them. That record is not before us, but we assume the testimony of Ranger Hullum and Swiney was substantially the same as in this case. Judge Walker refused to find that Hawley should be considered to be a party or codefendant.

Judge Walker ruled that Judge Herod had not represented appellant; therefore, Judge Herod was not disqualified to preside in this trial. As to the motion to recuse, Judge Walker referred to the judgment in Hawley's case, stating that it embodied the agreement of the State and Hawley. Other offenses by Hawley against Swiney were taken into account under TEX. PENAL CODE ANN. § 12.45 (Vernon 2003); that was part of the plea bargain agreement. Judge Walker then denied the motion to recuse.

*Appellant's First Three Issues Concerning Judge Herod*

Appellant's first three issues concern Judge Steven Herod: (1) whether Judge Herod was disqualified from serving as presiding judge in this case, (2) whether Judge Herod abused his discretion in not recusing himself, and (3) whether Judge Herod erred in sustaining the objection of the State to Judge Herod testifying in this case. All three issues are based on the fact that, prior to becoming a judge, Judge Herod was the defense attorney for Hawley in 1993 when Hawley pleaded guilty and was convicted of aggravated sexual assault of Swiney. This fact was known to appellant's trial counsel at his first trial. Before the first bench trial before Judge Herod, appellant's first defense counsel wrote Judge Herod and said that neither he nor appellant objected to Judge Herod presiding at that trial.

*A. Disqualification of a Judge.*

TEX. CONST. art. V, § 11 sets forth the grounds where a judge is disqualified to preside in a case:

> No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.

7

TEX. CODE CRIM. PROC. ANN. art. 30.01 (Vernon 2006) provides the grounds for disqualification in a criminal case:

> No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity with the third degree as determined under Chapter 573, Government Code.

A party seeking to disqualify the trial judge in a criminal case must urge one or more of the specified grounds in Article 30.01. *Cumpian v. State*, 812 S.W.2d 88, 91 (Tex. App.—San Antonio 1991, no pet.). The disqualification of a trial judge in a criminal matter must comply with the strict requirements of the constitutional and statutory provisions. These grounds are exclusive. *Ex parte Largent*, 162 S.W.2d 419, 426 (Tex. Crim. App. 1942) (op. on reh'g); *Ricondo v. State*, 657 S.W.2d 439, 447 (Tex. App.—San Antonio 1983, no pet.).

It is undisputed that Judge Herod has never represented appellant. In an attempt to disqualify Judge Herod on the last ground in Article V, section 11, appellant's argument before Judge Walker was, and before this court is, that Judge Herod should be considered "counsel in [this] case" because Hawley should be considered to be an unindicted codefendant of appellant. Conceptually, it is difficult to understand how Judge Herod could still be considered Hawley's counsel in this case; Judge Herod only represented Hawley in connection with Hawley's plea and conviction in 1993. As Judge Walker pointed out, to agree with appellant's position requires one to engage in speculation. It also requires stacking inference upon inference.

Appellant points out that, as a result of Swiney's complaint, appellant was indicted by an Eastland County grand jury for four separate crimes against Swiney, all allegedly committed during 1990, the same year Swiney was repeatedly assaulted by Hawley. Although appellant asserts that each alleged offense by appellant occurred at Hawley's house, in Hawley's presence, and with Hawley's assistance, cooperation, and encouragement, appellant provided no record references for that statement. Having made these assertions, appellant then concludes that Hawley was a party to all of the crimes allegedly committed by appellant against Swiney under TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003).

In appellant's brief, he also asserts that the alleged offenses against Swiney by appellant, "and for which Hawley was a culpable party, all arose out of the same continuing course of

conduct and criminal episode." After making this assertion, appellant cites *Garcia v. State*, 981 S.W.2d 683 (Tex. Crim. App. 1998), and *Ex parte Goodbread*, 967 S.W.2d 859 (Tex.Crim.App. 1998). But those cases simply stand for the proposition that the "on or about" allegation in an indictment will give notice of the offense alleged and support conviction for any offense proven to have occurred prior to the date in the indictment. The cases do not provide authority to conclude that appellant's abuse of Swiney and Hawley's abuse of Swiney occurred at the same times or involved the same facts.

We further note that no record citations were made in support of this assertion. The record does not support a conclusion that there was "the same continuing course of conduct and criminal episode" involving Hawley and appellant with Swiney. As the State pointed out in its brief, Hawley's indictment alleged an offense committed against Swiney on March 16, 1990, while all of those with which appellant was charged were alleged to have been committed in July or August of 1990. Even granting that appellant is correct that "on or about" speaks essentially to the limitations issue, the same criminal episode is an inference by appellant that is not supported by the record.

Our reading of the record did not confirm that all the offenses by appellant against Swiney were in Hawley's presence and with Hawley's assistance, cooperation, and encouragement. Yet, we are asked to infer from the evidence that Hawley's actions met the requirements of Section 7.02.

Citing *In re K.E.M.*, 89 S.W.3d 814, 828 (Tex. App.—Corpus Christi 2002, no pet.), appellant argues that Hawley's offenses against Swiney and appellant's alleged offenses "arose out of the same operative facts" and that, therefore, Judge Herod was constitutionally disqualified. Again, the record does not support this broad assertion, nor did appellant attempt to refer this court to record citations. Swiney's testimony indicated that Hawley's offenses against him and appellant's offenses occurred at different times.

There is one major impediment to accepting appellant's argument that Hawley could have been co-indicted with appellant: the testimony of Judge Herod at the hearing before Judge Walker. At that hearing, and as quoted above, Judge Herod testified that the district attorney agreed to not prosecute other offenses by Hawley against Swiney if Hawley took the plea agreement. "Other offenses" would include Hawley being considered a party or a codefendant to appellant's sexual abuses against Swiney. To accept appellant's argument, we would have to

9

also set aside Judge Herod's testimony. As Judge Walker noted, any other offenses by Hawley against Swiney were taken into consideration when judgment was rendered on his plea agreement.

There is another practical reason why it defies logic to view Hawley as an unindicted codefendant in this case. Hawley was convicted for his offenses against Swiney in 1993. He is still serving that sentence, but he had completed sixteen years of his sentence at the time of this trial in 2009. It is doubtful that Hawley would have taken the chance of being indicted again.

Appellant's first issue is overruled.

*B. Failure to Recuse.*

As appellant correctly notes, disqualification is mandatory, but recusal is consigned to the sound discretion of the court and reviewable on appeal only for an abuse of that discretion. TEX. R. CIV. P. 18a(f); *Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000); *Degarmo v. State*, 922 S.W.2d 256, 267 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Judges have an obligation to decide the actionable matters properly within the jurisdiction of their courts; therefore, they should not recuse themselves unless a reasonable, disinterested person, cognizant of the circumstances, would consider recusal appropriate. *Kemp v. State*, 846 S.W.2d 289, 305 (Tex. Crim. App. 1992).

Appellant's recusal argument is based on TEX. R. CIV. P. 18b(2)(f)(iii). This provision concerns a judge who, within the judge's knowledge, is likely to be a material witness in the proceeding. We disagree that Judge Herod could be properly considered a material witness in this case. First, there is nothing in the record indicating that Judge Herod recalled Hawley making any prior consistent statements. Appellant failed to show what Judge Herod's testimony would have been with respect to any prior consistent statements or that his testimony was material. At the pretrial hearing, appellant did not question Judge Herod about the alternative plea or about any statements that may have been made by Hawley about appellant's participation or lack thereof in any assault against Swiney. And, later, Judge Herod stated on the record that he obtained no information concerning other individuals during his representation of Hawley and that he did not learn anything about any possible charges against appellant at that time. Judge Herod did not even realize that this case involved the same victim. Second, Ronnie White, who was sheriff of Eastland County in 1993, testified that District Attorney Leslie Vance was with the attorney general's office in Austin. Appellant could have subpoenaed Vance to have

10

him testify as a witness to confirm that he offered the alternative plea of twenty-five years with its condition to Hawley and that the offer was declined. We note that the State did not attempt to impeach Hawley's testimony that he received the alternative plea offer but turned it down because he believed appellant did not abuse Swiney. The record does not show that Judge Herod was likely to be a material witness. Under these circumstances, we cannot hold that Judge Herod's failure to recuse himself constituted an abuse of discretion. Appellant's second issue is overruled.

*C. The State's Objection to Judge Herod Testifying.*

During the trial, appellant sought a subpoena from the court to force Judge Herod to testify. Appellant wished to call Judge Herod as a witness to rehabilitate Hawley through the introduction of prior consistent statements regarding appellant. The State objected, and the trial court denied appellant's request for the subpoena.

Appellant argues on appeal that Judge Herod's testimony concerning Hawley turning down the more favorable plea would have been admissible under the hearsay rule, TEX. R. EVID. 801. He points out that the Texas Rules of Evidence permit rehabilitation of an impeached witness with proof that he previously made a statement out of court consistent with his trial testimony if the declarant will be subject to cross-examination about the prior statement and the statement is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Rule 801(e)(1)(B).

Appellant, however, has not properly preserved his complaint under TEX. R. EVID. 103 because he failed to make an offer of proof as to what Judge Herod's testimony would have been with respect to any prior consistent statements made by Hawley. In order to preserve error regarding a trial court's exclusion of evidence, the complaining party must comply with Rule 103 by making an "offer of proof" that sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009). The primary purpose of such an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. *Id.* at 890.

Though appellant asserts in his brief that Hawley told Judge Herod that he could not accept the alternative plea offer because appellant was not involved in any of the assaults, the record does not indicate that Judge Herod recalled Hawley making any such prior consistent statements. Judge Herod stated on the record that he obtained no information concerning other

individuals during his representation of Hawley and that he did not learn anything about any possible charges against appellant at that time. When he denied appellant's application for subpoena, Judge Herod stated, "If you wish to make an offer of proof at a later time, we will certainly allow you to put that on the record." Our review of the record reveals that appellant did not thereafter make an offer of proof, nor did he request to make one. Appellant concedes in his reply brief, "We may not know, and Judge Herod might not remember, the specifics of his conversations with Hawley." In order to determine whether the exclusion of Judge Herod's testimony was erroneous and harmful, we need to know what his testimony would have been. It was appellant's responsibility under Rule 103 to ensure that the substance of the excluded testimony be placed into the record. *Id.* at 891. Appellant failed in that responsibility and, therefore, failed to preserve his complaint relating to the exclusion of Judge Herod's testimony regarding Hawley's alleged prior consistent statements.

Furthermore, the State objected to appellant's requests for Judge Herod to testify at trial under TEX. R. EVID. 605. Rule 605 provides: "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." The language of Rule 605 is unambiguous in its prohibition. A judge who is presiding over a proceeding may not step down from the bench and become a witness in the very same proceeding over which he is currently presiding. *Hensarling v. State*, 829 S.W.2d 168, 170 (Tex. Crim. App. 1992). The trial court correctly sustained the State's objection to Judge Herod testifying during the trial. The third issue is overruled.

*Admission of Expert Testimony*

In his fourth issue, appellant asserts that the trial court erred in allowing the testimony of Ranger Hullum as an expert witness. Specifically, appellant argues that Ranger Hullum should not have been allowed to testify as an expert in the field of child sexual abuse. Ranger Hullum testified about the "grooming" that often occurs in sexual abuse cases where the victim is a child. Ranger Hullum also explained why, in some cases, child victims delay in reporting the sexual abuse. Some of the reasons for such a delay include lack of maturity, education, or life experiences to know how to handle the situation; fear of retaliation from the molester; and embarrassment.

Under TEX. R. EVID. 702, the proponent of scientific evidence must show, by clear and convincing proof, that the proffered evidence is sufficiently relevant and reliable to assist the

jury in accurately understanding other evidence or in determining a fact in issue. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In its position as the gatekeeper of scientific evidence, the trial court has discretion in determining the relevance and reliability of expert testimony. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the jury. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). When the subject of the expert's testimony involves a "soft" science, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, *Kelly*'s requirement of reliability applies but with less rigor than to the hard sciences. *Russeau v. State*, 171 S.W.3d 871, 883 (Tex. Crim. App. 2005). When "soft" sciences are at issue, the trial court should inquire (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies on or utilizes the principles involved in the field. *Davis*, 329 S.W.3d at 814; *Russeau*, 171 S.W.3d at 883. A trial court's ruling admitting expert testimony is reviewed on appeal for an abuse of discretion, and we must review that ruling in light of what was before the trial court at the time the ruling was made. *Weatherred*, 15 S.W.3d at 542.

The record shows that a hearing was conducted outside the presence of the jury. During the hearing, Ranger Hullum testified about his extensive experience and training related to sexual abuse cases involving child victims and stated that he had an up-to-date knowledge of the professional literature regarding the sexual abuse of children. Ranger Hullum testified that he had read and studied published articles in this field; he named several specific sources at the hearing. Ranger Hullum then explained that grooming is a precursor to the sexual contact between the offender and the child victim to gain the child's trust, which could involve paying attention to the child, providing alcohol or drugs to the child, or providing pornography to the child. Ranger Hullum acknowledged that he had been recognized in courts across this State as having specialized knowledge and expertise on the topic of sexual crimes against children. The trial court noted that it had previously recognized Ranger Hullum as an expert on such topics. Based upon the testimony presented at the hearing, the trial court found that Ranger Hullum's

testimony would be of assistance to the jury and that Ranger Hullum was qualified by reason of his knowledge, skill, experience, training, and education to testify "as an expert in this area."

We have previously upheld similar testimony by Ranger Hullum when his qualification to testify as an expert was challenged. *See Morris v. State*, No. 11-08-00069-CR, 2010 WL 2224651, at *9-10 (Tex. App.—Eastland June 3, 2010, pet. granted) (mem. op., not designated for publication). The court in *Bryant v. State*, No. 01-09-00200-CR, 2010 WL 3212126 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010, pet. ref'd), reached the same conclusion under similar circumstances. In *Bryant*, an investigator with the Tyler Police Department was allowed to testify as an expert witness regarding the grooming of a prospective child victim of sexual assault over the defendant's objection that the investigator was not qualified to give such testimony. 2010 WL 3212126, at *3. We cannot hold that the trial court abused its discretion in determining that Ranger Hullum qualified as an expert in the field, that his field of expertise is a legitimate one, that the subject matter of his testimony was within the scope of that field, that his testimony properly relied on or utilized the principles involved in that field, or that his testimony would assist the jury.

Furthermore, the record reveals not only that Ranger Hullum possessed sufficient expertise but also that the testimony about which appellant complains on appeal does not relate to a topic that is well outside the common understanding of jurors. The Texas Court of Criminal Appeals has stated, "If the expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010) (detective had sufficient expertise to give an expert opinion, based on his experience as an officer, on whether same knife was used to inflict wounds on the victim and a cat) (quoting *Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006)). The court in *Davis* continued, "Whether two cuts look like they could have been made from the same knife does not appear to be a question so far removed from a jury's common experience as to require the possession of advanced degrees or a great deal of highly specialized training." *Id.* In the present case, Ranger Hullum's expert testimony about the grooming of child victims that commonly occurs and some of the reasons why the victims delay in reporting the sexual abuse – i.e., embarrassment; fear of retaliation; or lack of maturity, education, or life experiences – is not particularly complex and "is close to the

jury's common understanding." *See id.* We hold that the trial court did not abuse its discretion in allowing Ranger Hullum to testify as an expert witness. Appellant's fourth issue is overruled.

*Exclusion of Evidence*

In his fifth issue, appellant contends that the trial court erred in excluding documentary evidence from the United States Department of Transportation showing that appellant has never held an airplane pilot's certificate. We must review the trial court's exclusion of evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

The document that was excluded is a letter purportedly from a manager of the Airmen Certification Branch of the Federal Aviation Administration stating that "no pilot certificate of any kind was ever issued to Mr. Thomas H. Teczar, social security number . . . birthdate March . . . ." Appellant asserts that the document qualified as an exception to the hearsay rule under TEX. R. EVID. 803(10), which incorporates TEX. R. EVID. 902, and that the document was self-authenticating under Rule 902(1). The record shows, however, that the document offered by appellant was a copy of a letter that did not meet the requirements of Rule 902(1), which provides in relevant part for the self-authentication of a document "bearing a seal" of the United States "or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution." The document at issue is a copy of a letter that, though it was written on letterhead paper, is not under seal or certified. Also, though the letter is signed, the manager's signature does not purport to be an attestation or execution. Because appellant failed to establish the document's authenticity, the trial court did not abuse its discretion in excluding the document. Appellant's fifth issue is overruled.

*Conclusion*

The judgment of the trial court is affirmed.

TERRY McCALL
JUSTICE

April 15, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: McCall, J.,
Strange, J., and Hill, J.[1]

---

[1]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.