**Opinion issued March 31, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00593-CR

———————————

**BOBBY DEWAYNE EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court**
**Jefferson County, Texas[*]**
**Trial Court Case No. 12-14438**

---

[*] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this court. *See* Misc. Docket No. 13-9008 (Tex. Jan. 17, 2013); *see also* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases).

## MEMORANDUM OPINION

A jury convicted appellant Bobby Dewayne Evans of aggravated robbery and found that he used a deadly weapon in the commission of the offense. *See* TEX. PENAL CODE § 29.03. The trial court assessed punishment at 50 years in prison.

Evans appealed, raising 13 issues. Within these issues, he challenges: (a) the sufficiency of the evidence (issues 1 and 2); (b) the State's failure to disclose allegedly exculpatory evidence (issues 3 and 4), (c) the trial court's failure to grant an evidentiary hearing on his motion for new trial (issue 5), (d) statements made during closing argument that he contends shifted the burden of proof and violated his due-process rights (issues 6, 7, and 8), and (e) the trial court's admission of evidence that was the subject of a motion to suppress and the court's related failure to make certain rulings and findings in connection with the motion to suppress (issues 9 through 13).

Because we conclude that the record reveals no reversible error, we affirm the judgment of the trial court.

## Background

Complainant Wingrove Felton Robinson needed some repairs at his rental home, and his landlord suggested that he temporarily occupy a room in another of her rental houses. Robinson moved into a room in a house where appellant Bobby

Dewayne Evans lived with his girlfriend, Penzalla Winston. At the time, Robinson was 75 years old and recovering from cancer treatment.

Robinson was lying in bed when Evans knocked on his door and asked to use his hotplate. But upon entering the room, Evans demanded money. Robinson refused, and Evans responded by pushing him, punching his right eye, tackling him to the ground, and attempting to break his leg. At one point Evans left the room, returning moments later with two aluminum baseball bats. He said, "I need that money or I'm going to tap you in your head with these. . . . If you don't give me the money, I'm going to smash you." Robinson again refused, and Evans hit him on the head with a bat, causing him to bleed profusely. Robinson thought he "was going to die." He testified that Evans took his wallet, including a debit card and a driver's license. Evans dragged Robinson from the house, forbade him from coming back inside, and left him alone, where he later asked a passerby to call 911. Robinson never returned to the house because it was "too heartbreaking."

Beaumont Police Department Officer D. Vaughn responded to the 911 call and found Robinson standing outside, bleeding from his head and his eye. Robinson told Officer Vaughn that his roommate hit him with a baseball bat after he refused to give him money. An ambulance arrived and transported Robinson to a Beaumont hospital, where he received 15 staples to his scalp. Ultimately surgery was required to repair his fractured eye socket.

Officer Vaughn was unable to search the house immediately because nobody answered when he knocked on the door. Meanwhile, Evans and Winston had left the house, and they found a police officer about a mile away. That officer contacted Officer Vaughn, who joined them. Evans provided a differing account of what happened, saying that Robinson's injuries were self-inflicted. Winston said that she did not see anything that happened at the house. Evans was arrested on an outstanding warrant, and later he was charged with committing aggravated robbery against Robinson.

In addition to Robinson's testimony at trial on the robbery charge, the State proffered hospital records, which included descriptions of Robinson's injuries and the history he provided, i.e., that he was assaulted by his "neighbor," who hit him with a fist and a baseball bat after he refused a demand for money. Officer Vaughn also testified, and Evans moved to suppress statements he made during the officer's investigation. At a hearing outside the presence of the jury, Officer Vaughn testified that there might have been a patrol car videorecording of the conversation at issue, but he suspected it was no longer available because of the lapse of time and retention policies. The State announced that it would not ask Officer Vaughn about statements Evans made to him during its case-in-chief. The court concluded the hearing without ruling on the motion to suppress.

Evans testified in his own defense, and he disputed Robinson's account. According to Evans, he and Winston were in his room when Robinson came to the door with his face covered in blood. He said that Robinson told him that a neighbor had assaulted him. Evans further testified that Robinson hit him on the shoulder with a skillet, and when he told Robinson to leave, he replied, "You're going to have to kill me." Evans said that he escorted Robinson out of the house, returned inside, and locked the door. He denied hitting Robinson, taking any of his property, or demanding money. In apparent contradiction of his testimony that Robinson was assaulted by a neighbor, Evans also testified that Robinson's injuries were self-inflicted.

Winston testified that she was in the bedroom with Evans when she heard a noise that sounded like a "bump." She said that she saw Robinson strike Evans with a pot and heard him say, "You're going to have to kill me." She denied seeing any blood or injuries on Robinson or hearing any cries for help. She testified that she never saw Evans take any of Robinson's belongings, and Robinson never returned to the house. She admitted that she previously told police that she did not see what happened.

On rebuttal, the State called Officer Vaughn back to the stand, and he testified without objection that Evans told him Robinson's injuries were self-inflicted.

The jury found Evans guilty of aggravated robbery. The trial court assessed punishment at 50 years in prison. Evans filed a motion for new trial, which the trial court denied without holding an evidentiary hearing. Evans appealed.

**Analysis**

On appeal, Evans contends that the evidence was insufficient to support the conviction. He also argues that some evidence was withheld from him and that other evidence should have been suppressed at trial. He further argues that he was unfairly prejudiced by the State's improper closing argument and that the court erred by denying his motion for new trial.

## I. Sufficiency of the evidence

Evans's first two issues challenge the legal sufficiency of the evidence to support his conviction. He first argues that he and Winston were credible witnesses—but Robinson was not—and that the evidence is insufficient when viewed in the light most favorable to the defense theory of the case. He also argues that there is no evidence of a completed theft.

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). The standard is

the same for both direct and circumstantial evidence cases. *See Carrizales*, 414 S.W.3d at 742; *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011); *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

A person commits aggravated robbery if he commits robbery and causes serious bodily injury to another person, uses or exhibits a deadly weapon, or causes or threatens imminent bodily injury to a person who is 65 years of age or older or disabled. TEX. PENAL CODE § 29.03. A person commits robbery if "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally, knowingly, or recklessly causes bodily injury to another" or "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02; *see id.* § 31.03(a) (theft); *id.* § 31.03(b)(1) (unlawful appropriation).

## A. Credibility of the witnesses

On appeal, we consider the evidence in the light most favorable to the factfinder's decision. This case was tried before a jury that was tasked with assessing the credibility of the witnesses and determining all issues of fact, including resolving inconsistencies in the testimony. Evans argues that he and

7

Winston were credible and that when their testimony is viewed in a positive light—and Robinson's testimony is rejected—there is insufficient evidence to support the jury's verdict. The jury, however, was free to draw its own conclusions about the witnesses' credibility. The verdict reflects the jury's implicit conclusion that Robinson was credible and the contrary testimony offered by Evans and Winston was not. In any case, the credibility determination is purely the province of the jury, and it may not be second-guessed on appeal. *See Adames*, 353 S.W.3d at 860; *Wiley*, 388 S.W.3d at 813.

## B. Lack of evidence of a completed theft

Evans also argues that the lack of evidence of a completed theft renders the evidence in support of his conviction insufficient. This is incorrect. For the purpose of robbery, "in the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." TEX. PENAL CODE § 29.01(1). The State is not required to show "a completed theft" in order to "establish the underlying offense of robbery." *Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003).

Robinson testified that Evans assaulted him with a baseball bat while trying to take his money, i.e., while in the course of committing theft. Robinson also testified about how he suffered serious bodily injuries and feared for his life, and he specifically testified that Evans took his wallet. Thus, the evidence was

8

sufficient to show the essential elements of aggravated robbery, that Evans used a deadly weapon to cause serious bodily injury to Robinson while in the course of committing theft. *See* TEX. PENAL CODE § 29.01–.03; *id.* § 31.03. Accordingly, we hold that the evidence was legally sufficient to support the jury's verdict, and we overrule issues one and two.

## II. Motion to suppress

Evans moved to suppress evidence of certain statements that he made to Officer Vaughn prior to his arrest. The suppression hearing was held mid-trial and outside the presence of the jury. However, the court concluded the hearing without ruling on the motion. Evans raises several issues related to his motion to suppress.

During the suppression hearing, Officer Vaughn testified that he did not warn Evans of his *Miranda* rights. He said that at least two other officers were present, and one of them most likely conducted a pat-down search prior to his arrival. He testified that Evans spoke to him voluntarily for 10 or 15 minutes while he checked for outstanding warrants, as he ordinarily does when speaking to witnesses during an investigation. Evans told him that Robinson caused the injuries to himself and then called the police to accuse him of a crime. Officer Vaughn did not know whether Evans would have believed that he was free to leave or not to answer questions, but he acknowledged that "any reasonable person could probably be intimidated by at least two police officers standing there." He denied

9

interrogating Evans and reiterated that he "basically asked him what his side of the story was." When the trial court asked if he spoke to Evans in a conversational manner, he said, "I would have to go back and listen to my video."

Evans's attorney then asked about the videorecording. Officer Vaughn testified that police "normally" record videos from their cars, but he did not know if his equipment was turned on at the time. In response to a question from the trial court, Officer Vaughn said that the normal protocol is to retain videos for six months before the recording would be erased or recorded over. He said that the incident in question occurred more than a year prior to trial. The court asked Officer Vaughn to ascertain if the videorecording was available. No further mention of the videorecording appears in the trial transcript.

At the conclusion of the suppression hearing, the trial court asked if the State wanted to introduce the officer's testimony. The State asked for a ruling as to whether the testimony was "even admissible now," to which the court responded, "I think it is, but the question is do you really want it?" The State then informed the court that it did not want to introduce the statements "at this point." The court observed that if the State wished to introduce the testimony, it "would make findings on the record." No such findings appear in the record.

## A. Failure to rule on motion to suppress

In issue nine, Evans argues that the court erred by admitting Officer Vaughn's rebuttal testimony without ruling on the motion to suppress. In particular, Evans contends that the testimony that should have been suppressed primarily concerned his statements to Officer Vaughn that Robinson had inflicted injuries on himself.

Evans did not object to the court's failure to rule on the motion to suppress, nor did he reurge the motion or otherwise object when Officer Vaughn testified during the State's rebuttal case. In addition, some of the testimony challenged on appeal was solicited by defense counsel on cross-examination. For those reasons, we hold this issue was waived. *See* TEX. R. APP. P. 33.1; *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

## B. Admission of statements elicited by police officer's questions

The same logic applies to issues ten and eleven. In issue ten, Evans argues that his statements to Officer Vaughn should have been suppressed because they were the product of interrogation conducted without the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), and the Code of Criminal Procedure. Article 38.22 prohibits the use of an oral statement of an accused made as a result of custodial interrogation unless the statement is made voluntarily, after the accused is informed of his rights, and is electronically

11

recorded. TEX. CODE CRIM. PROC. art. 38.22 § 3. In addition, a copy of the recording must be preserved and provided to the accused's attorney at least 20 days before trial. *Id.*

In issue eleven, Evans argues that the admission of Officer Vaughn's testimony violated his rights under Article 38.22 because the State did not provide him with a copy of his recorded statement prior to trial. He further contends that the court therefore erred by admitting Officer Vaughn's testimony without ruling on the motion to suppress.

As we explained with respect to issue nine, there was no objection to the rebuttal testimony, no objection to the trial court's refusal to rule, and some of the challenged testimony was solicited on cross-examination by Evans's trial counsel. For the same reasons that we concluded issue nine was waived, we also conclude that issues ten and eleven were waived. *See* TEX. R. APP. P. 33.1; *Leday*, 983 S.W.2d at 718.

## C. Admission of statements elicited by police officer's questions

In issues twelve and thirteen, Evans argues that the court erred by failing to enter findings of fact on the suppression hearing and specific findings on whether his statements were voluntary. On Evans's motion, we abated the appeal so that the trial court could enter findings of fact and conclusions of law as to the motion to suppress. The trial court found that after the suppression hearing, the State

12

withdrew its proffer of Officer Vaughn's testimony. Then Evans made no further objections when Officer Vaughn later was presented as a rebuttal witness. The trial court concluded that because it made no ruling on the motion to suppress, no findings of fact or conclusions of law were required.

The record supports the trial court's conclusion. Because there was no ruling on the motion to suppress, the trial court was not obligated to make the findings of fact and conclusions of law that would have been required had such a ruling been made. *See State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012) (after court rules on motion to suppress, losing party may require the trial judge to make explicit historical findings of fact); *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (trial court must make findings of fact upon which court of appeals may review its ruling on a motion to suppress); *cf. Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011) (holding that appellant waived Article 38.22 argument by failing to present it to trial court for ruling). Issues twelve and thirteen are overruled.

### III.    Undisclosed evidence

In issues three and four Evans challenges the State's failure to disclose (1) a videorecording of statements made to Officer Vaughn and (2) a "call-out sheet" from the Beaumont Police Department. Evans argues that the State's failure to disclose and provide this information violated both the Due Process Clause of the

13

Fourteenth Amendment to the United States Constitution and the Due Course of Law clause in Article I, Section 19 of the Texas Constitution. However, Evans has not provided argument or authority concerning the protection provided by the Texas Constitution or how that protection differs from the protection provided by the United States Constitution. "State and federal constitutional claims should be argued in separate grounds, with separate substantive analysis or argument provided for each ground." *Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex. Crim. App. 1993) (citing *Heitman v. State*, 815 S.W.2d 681, 690–91 n.23 (Tex. Crim. App. 1991)); *Avilez v. State*, 333 S.W.3d 661, 669 n.3 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We therefore confine our analysis to Evans's federal constitutional arguments.

"A prosecutor has an affirmative duty to turn over material, favorable evidence to the defense." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963); *see also U.S. v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381 (1985) (suppression of exculpatory or impeachment evidence "amounts to a constitutional violation only if it deprives the defendant of a fair trial."). The withholding or suppression of

14

evidence is reversible only if the appellant shows that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to the accused; and (3) the evidence is material, meaning that there is a reasonable probability that had the evidence been disclosed the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)); *Higginbotham v. State*, 416 S.W.3d 921, 924 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

The materiality prong includes a "requirement that the defendant must be prejudiced by the State's failure to disclose the favorable evidence." *Harm v. State,* 183 S.W.3d 403, 406 (Tex. Crim. App. 2006). The defendant bears the burden to show materiality, which in this case means that the withholding of the evidence "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678, 105 S. Ct. at 3381; *see Hampton*, 86 S.W.3d at 612 (burden of proof). "Usually, a determination concerning the materiality prong of *Brady* involves balancing the strength of the exculpatory evidence against the evidence supporting conviction." *Hampton*, 86 S.W.3d at 613.

**A. Videorecording**

Evans contends that the State's failure to disclose a videorecording of statements he made to Officer Vaughn violated his constitutional rights. The State

argues that there is no such videorecording. Nothing in the record confirms that such a recording ever existed. Officer Vaughn's testimony was equivocal: he said he did not know if his video recorder was on at the time he spoke to Evans and Winston. The State would have no duty to disclose evidence that does not exist. *See Pena*, 353 S.W.3d at 810.

Even if a recording existed at some time, Evans still has a burden to show that such evidence was material. He assumes that the videorecording was "highly material," but he makes no argument and directs the court to no evidence that would support such a conclusion. *See* TEX. R. APP. P. 38.1(i). Although he argues that Winston's statements might have been admissible, exculpatory evidence, the "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Hampton*, 86 S.W.3d at 612.

Finally, even with a showing of materiality, a defendant must show that he was prejudiced by the alleged *Brady* violation. Evans first learned of the possible existence of a videorecording during trial. Although his counsel asked Officer Vaughn if it was possible for him to find out if such a video existed, he did not seek a recess or continuance in order to obtain the evidence. When the existence of undisclosed *Brady* material is first discovered during trial, a defendant must seek a continuance to obtain the evidence or risk waiver of the issue because "failure to

16

request a continuance indicates that the tardy disclosure of the evidence was not prejudicial." *State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Davis v. State*, 992 S.W.2d 8, 12 (Tex. App.—Houston [1st Dist.] 1996, no pet.)). Because Evans did not seek a continuance, we conclude that the tardy disclosure of the possible existence of a videorecording that was not shown to be material could not have resulted in prejudice.

### B. Call-out sheet

Evans makes several references to the "call-out" sheet in his brief. Despite the fact that Robinson is not mentioned, Evans asserts that this document, which was attached as an exhibit to his motion for new trial, showed that Robinson frequently complained to the Beaumont Police Department, including a false report of theft a week before the robbery in this case. On appeal, Evans states that he was not provided with this call-out sheet due to a lack of preparation by the prosecution. He asserts that the call-out sheet indicated that Robinson was "trumping up charges to get [him] in trouble" and therefore had to be disclosed as exculpatory evidence. Unfortunately, the State's appellate brief failed to respond to this aspect of Evans's argument.

Considering that the motion for new trial and its supporting memorandum focused on the alleged videorecording and made no reference to the call-out sheet, this issue arguably has not been preserved. *See* TEX. R. APP. P. 33.1, *cf. Pena*, 353

17

S.W.3d at 809 (despite failure of motion for new trial to reference a particular *Brady* argument, issue held to be preserved for appeal because the issue "dominated the motion hearing," demonstrating that the trial court and the State were both aware of the purported error). Moreover, Evans's appellate brief presents no cogent legal argument about the materiality of the call-out sheet, instead only referring us generally to attachments to the motion for new trial, without appropriate citations to the record. *See* TEX. R. APP. P. 38.1(i); *Hampton*, 86 S.W.3d at 612–13 (appellant must prove materiality of withheld evidence by balancing the strength of the exculpatory evidence against the evidence supporting conviction). In light of these failures to adequately present and argue the point in the trial court or on appeal, we hold that Evans's complaint about the State's failure to produce the "call-out" sheet—which does not even identify Robinson as being responsible for any calls made to the Beaumont police—has been waived. TEX. R. APP. P. 33.1 & 38.1(i).

We overrule issues three and four.

## IV.   Motion for new trial

In his fifth issue, Evans argues that the trial court abused its discretion by not holding an evidentiary hearing on his motion for new trial. We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion, and we will reverse only if the trial court's decision was clearly wrong and outside the

zone of reasonable disagreement. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a hearing on a motion for new trial are (1) to determine whether the cause should be retried and (2) to prepare a record that would enable the defendant to present issues on appeal if the court denies the motion. *Id.* at 338. A criminal defendant does not have an "absolute right" to a hearing on his motion for new trial. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). For example, a hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). When the grounds in the motion are not already in the record, the motion must be supported by an affidavit that sets forth the factual basis for the claim. *Smith*, 286 S.W.3d at 339. This affidavit need not make out a prima facie case that the movant is entitled to a new trial, but it must give rise to reasonable grounds in support of the claim. *Id.* As such, "a trial judge abuses his discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs*, 298 S.W.3d at 199 (citing *Smith,* 286 S.W.3d at 338–39).

In his motion for new trial, Evans argued that the evidence was legally insufficient, that the court had erred by overruling objections to Robinson's

testimony which was "largely and obviously self-serving in nature," that the State failed to disclose the alleged videorecording of his conversation with Officer Vaughn, and that the court likewise erred by not assuring that the videorecording was available to him. Attached to the motion for new trial was an affidavit from Winston in which she expressed her belief in Evans's innocence and an affidavit from defense counsel attaching the Beaumont police department call-out sheet. As we have observed, the motion for new trial did not mention the call-out sheet, which itself did not identify any caller or indicate the resolution of the incidents. The nature of each indicated call was described briefly as "theft," "check welfare," "non specific diag or illness," and "serve warrant." Evans made no argument about how the call-out sheet from the Beaumont police department or any other newly discovered evidence undermined the evidence at trial that supported the jury's verdict. The trial court denied the motion for new trial without a hearing noting that the motion raised "no issues of fact or law" that were not "fully developed in the record of the case," and that the "allegations in the motion, even if true, are insufficient to require the granting of a new trial."

On appeal, Evans asserts that the State's failure to disclose the call-out sheet was a *Brady* violation because it was newly discovered evidence. The argument Evans makes on appeal to challenge the denial of a hearing—that the call-out sheet was newly discovered *Brady* material that would have caused a different result at

trial—does not comport with the arguments made in his motion for new trial. Although he attached the call-out sheet to his motion for new trial, that motion itself does not mention the call-out sheet or inform the court of an assertion of newly discovered evidence that might have warranted a hearing. As such, the argument on appeal was not preserved for appellate review. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990) ("objection at trial which differs from the complaint on appeal preserves nothing for review").

In his motion for new trial, Evans argued that the failure of the prosecutor to determine if a videorecording had been made and to provide his attorney with a copy violated his due process rights and his right to pretrial disclosure of *Brady* material. Implicit in this argument is an assertion that the videorecording would have been favorable to Evans and material to guilt or punishment, i.e., had it been disclosed the result of the trial would have been different. *See Pena*, 353 S.W.3d at 809; *Higginbotham*, 416 S.W.3d at 924. In his motion, Evans referred to Officer Vaughn's testimony that he might have made a videorecording and to statements from the prosecutor that he had neither knowledge nor possession of such a video. Although not set forth in the motion, the record shows that in response to questions from the trial court, Officer Vaughn testified that the incident occurred more than a year before trial and that his department's retention policy required retention of videorecordings for six months. He also testified that no one had asked him to

21

retain a video pertaining to this case. In a "Memorandum Supporting Motion for New Trial," Evans argued that if such a videorecording existed and showed his demeanor shortly after the alleged aggravated robbery, the State was required to provide him with a copy of it. He also argued that it should have been provided because Winston's statements "might have been" admissible and exculpatory and "could have led to other evidence" because the incident was more fresh in her mind.

The motion and the affidavits attached to it do not establish reasonable grounds that Evans could be entitled to relief, i.e., a new trial based on his claim that the State withheld *Brady* material. Although Evans was present for the discussion captured on any existing recording, the conclusory statements in the motion for new trial do not explain how or why any such videorecording could be expected to be favorable to Evans or could have changed the outcome of the trial. The affidavits attached to the motion for new trial do not mention the videorecording at all. *See Smith*, 286 S.W.3d at 339 (an affidavit setting forth the factual basis for a claim is a prerequisite to obtain a hearing on a motion for new trial). Accordingly, we hold that the trial court did not abuse its discretion by denying an evidentiary hearing on the grounds stated in the motion for new trial. *See id.*

We overrule the fifth issue.

22

## V. State's closing argument

### A. Trial court's refusal to instruct jury to disregard comment about reasonable doubt

In issues six and seven, Evans argues that the court erred by failing to instruct the jury to disregard the State's comment about reasonable doubt in its closing argument. Although Evans's objection to the comment was sustained, the trial court refused to instruct the jury to disregard it.

"Contested jury argument must be extreme or manifestly improper to constitute reversible error." *Bryant v. State*, 340 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). "In general, proper jury argument encompasses one of the following: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to the opposing counsel's argument; and (4) pleas for law enforcement." *Id.* (citing *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999)). We consider three factors when assessing the impact of the harm arising from jury-argument error: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Berry v. State*, 233 S.W.3d 847, 858–59 (Tex. Crim. App. 2007).

After the close of evidence, Evans had the first opportunity to deliver closing remarks to the jury because the State waived its right to speak first. Defense counsel argued that what happened to Robinson may have been an assault but was not a robbery because Evans merely knocked the wallet to the floor and Robinson never returned to the house to collect his belongings. He also argued that that the State did not proffer testimony from other officers or EMS technicians who responded to the 911 call or the detective who took statements from Evans and Winston months after the incident. His trial counsel urged the jury to return a verdict of not guilty, saying:

> You said more was better but you got less and with that less, the State is going to ask you to find Mr. Evans guilty beyond a reasonable doubt. Well, erase your doubt. Bring those people in. Let them testify. Let them be subject to cross-examination.
>
> . . . .
>
> Ladies and gentlemen of the jury, I'm sorry. Your response to the prosecutor is that I'm sorry this did not occur. The evidence simply is not there. Bobby Dewayne Evans may be a demon. He may be a lot of things, but he did not commit aggravated robbery. He's not guilty. Thank you very much.

The State addressed the jury last, arguing about the inconsistencies in or implausibility of the testimony of Evans and Winston. The State also responded to the defense argument that what happened to Robinson may have been an assault but was not robbery:

24

> The defense wants you to think there is no theft. Don't be misled. I've never seen a defense attorney come into court and tell you, yeah, there is enough evidence. Find them guilty. Their job is to bring up reasonable doubt.

Evans's counsel objected to this statement, saying: "That is not what we're ethically bound to do." The trial court sustained the objection and told the jury: "Their job is to represent their client with zeal." The court refused to instruct the jury specifically to disregard the statement, but it said in open court in the presence of the jury: "They've been instructed . . . that the final arguments do not constitute evidence, and I trust the jury understands that and will follow that instruction."

Evans argues that the State's argument was improper because it suggested to the jury that the defense had the burden of proof to show a reasonable doubt. In determining whether an argument was improper, we consider the context of the statement. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). The State's comment that "their job is to bring up reasonable doubt" is susceptible of more than one meaning. Evans argues that it was an attempt to persuade the jury that he had the burden of proof to show reasonable doubt. In context, however, it also could be a response to the defense closing argument—to point out or "bring up" in its closing argument possible areas for reasonable doubt. As such, the comment would be a response to defense counsel's argument and a proper subject of closing argument. *Bryant*, 340 S.W.3d at 13; *Guidry*, 9 S.W.3d at 154.

25

Even to the extent the comment could have been understood differently, as suggested by Evans, he still has not shown that he was harmed. First, the prejudicial effect of the remark was limited because the prosecutor did not actually state that Evans had the burden of proof as to reasonable doubt, and it was an isolated instance. Second, the stated basis for the objection was that the State's comment did not accurately represent "what we're ethically bound to do." Although the trial court did not specifically instruct the jury to disregard the statement, the trial court did give an explanatory instruction by informing the jury of defense counsel's ethical duty to "represent their client with zeal." The trial court also reminded the jury that the arguments of counsel are not evidence and that it was required to follow the previously given instructions. The court's charge, which was read to the jury just before closing arguments and given to the jury to take into their deliberations, included the following instructions:

> The presumption of innocence alone is sufficient to acquit the defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all the evidence in the case. The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant. It is not required that the prosecution prove guilt beyond all possible doubt. It is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.
>
> . . . .

26

[Y]ou must be bound by and strictly follow the law contained in this charge.

Third, the evidence supporting the conviction in this case was strong: Robinson testified to the essential elements of the crime, and photographs and hospital records showed that he suffered serious bodily injury. Though Evans agreed that Robinson was seriously injured, his testimony and theory of the case was that the injuries were self-inflicted. The jury was able to assess the credibility of the witnesses based on their trial testimony, and it was also able to consider the photographic and documentary evidence of the injuries in light of the alternative explanations that were offered: aggravated robbery or self-inflicted wounds.

Evans has not shown that he was harmed by any impropriety in the prosecutor's closing argument, and we overrule issues six and seven.

## B. Credibility of defense witnesses

In issue eight, Evans argues that his Fourteenth Amendment due-process right to a fair trial was violated by the cumulative effect of the State's argument regarding the credibility of the defense witnesses and its comment about reasonable doubt. Evans did not object to any portion of the State's closing argument pertaining to credibility of the witnesses, nor did he object to any suggestion that Evans and Winston were not truthful. Aside from the statement of issue eight, he makes no substantive argument pertaining to this issue. "A defendant's failure to object to a jury argument or a defendant's failure to pursue to

an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see* TEX. R. APP. P. 33.1(a). A defendant also waives his right to complain of error on appeal if his trial objection does not comport with his appellate issues. *Curiel v. State*, 243 S.W.3d 10, 19 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Issue eight is overruled.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).